**MEMO ENDORSED**

**ASHCROFT SULLIVAN™**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 30, 2015

November 19, 2015

**VIA ECF & EMAIL**
**(Failla_NYSDChambers@nysd.uscourts.gov)**

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

   Re: <u>Nicole O'Connell, et al. v. Cellceutix Corp., et al., Case No. 1:15-cv-07194-KPF</u>

Dear Judge Failla,

  We represent Defendants Cellceutix Corporation, Leo Ehrlich, and Krishna Menon in the above-referenced matter. We write without objection of proposed lead plaintiff to request this Court to vacate its Order dated October 29, 2015, and to expedite consideration and appointment of lead plaintiff and lead counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(A)(i).

  We also present, with partial agreement, a proposed briefing schedule. The only area of disagreement regarding the briefing schedule concerns whether lead counsel should be entitled after appointment to file a third complaint in this matter, or whether the amended complaint already filed on behalf of proposed lead plaintiff (Dkt. 10) should instead be considered the operative complaint for purposes of the briefing schedule. This question is more complex than in other PSLRA cases given that proposed lead counsel: (a) filed the original complaint in this matter; (b) has been the only law firm involved in this case from the beginning, (c) is the only party moving this Court for appointment; (d) identified a former client, Gary Zagami, as a proposed lead plaintiff on August 7, 2015; (e) had a duty to satisfy Rule 11 obligations and heightened pleading requirements before filing the original complaint on September 11, 2015, or the amended complaint on Mr. Zagami's behalf on September 24, 2015, but failed to do so; and (f) has had over three months to file a complaint that contains facts beyond <u>sole</u> reliance on a defamatory article about Cellceutix posted online by an anonymous, self-proclaimed short seller (which in turn has resulted in Defendants providing notice of their intention to seek Rule 11 sanctions for filing two complaints that were not the product of a reasonable inquiry).

  Defendants discuss these issues below but would be pleased to submit a formal motion and memorandum of law within three (3) business days should the Court prefer. Defendants also respectfully request oral argument in the event the Court is inclined to grant leave to amend.

*Background*

  This summer, Cellceutix, an emerging biotech with clinical trials underway involving infectious disease and anti-cancer drugs, became the victim of an emerging pattern of so-called "short attacks," likely perpetrated by a coordinated group of individuals and/or hedge funds.

  The scheme is simple: (1) target a micro- or small-cap company that is traded over the counter; (2) "pump" the company's shares with good news to drive the price up; (3) "short" the

stock (in other words, sell the shares at the higher price without technically owning them); (4) post (or have posted) an article by an anonymous author who is a short seller[1] of the company's stock making sensational, false assertions – such as the company is a sham, its offices are empty, and/or its executives are associated with fraudsters – to drive the stock price down; (5) activate a social media network to propagate the message and spread the false assertions to drive the price down even further; (6) anticipate announcements by plaintiffs' law firms claiming securities fraud investigations of the company and future potential class action lawsuits, which will appear to validate the false claims about the company; and, finally, (7) "cover" the short position (in other words, buy back the stock that had been theoretically sold earlier) at the new, lower price, thereby reaping (illegal) profits in the process and leaving the company to clean up the consequences of the fraud.[2]

In this case, proposed lead counsel (the Rosen Law Firm) played a role in the scheme,[3] first by announcing an investigation of Cellceutix within two hours of the posting of a sensational article on August 6, 2015 – which undoubtedly contributed to the collapse of its stock price – and then – astonishingly in our view – by filing a class action complaint that is based only on that article by the anonymous short seller, without including any other information that would show a reasonable inquiry was conducted prior to filing. *See* "Cellceutix: Empty Office, Unviable 'Science', Misleading Disclosures, 96% Downside." Seeking Alpha. Mako Research, 06 Aug. 2015. 21 Oct. 2015. <http://seekingalpha.com/article/3406365-cellceutix-empty-office-unviable-science-misleading-disclosures-96-percent-downside>; "EQUITY ALERT: The Rosen Law Firm Announces Investigation of Securities Claims Against Cellceutix Corporation - CTIX." *Business Wire*. The Rosen Law Firm, 06 Aug. 2015. 21 Oct. 2015; Dkt. 1, 10.

On or about October 23, 2015, Defendants gave notice to proposed lead plaintiff and counsel that the complaints were frivolous, were filed without satisfying Rule 11 due diligence obligations, and should be withdrawn immediately.[4] The Rosen Law Firm declined to do so and expressed its intent to seek leave to amend the complaint yet again, which Defendants oppose.[5]

---

[1] Short sellers operate by speculating that the price of a security will decrease, and, as such, "have an obvious motive to exaggerate the infirmities of the securities in which they speculate." *See In re Longtop Financial Technologies Limited Securities Litigation*, 910 F.Supp.2d 561, 577-8 (S.D.N.Y. 2012).

[2] The scheme also may involve buying additional shares of the target company at the artificially low price to hold and wait until the stock rebounds from the false assertions as the truth emerges.

[3] Defendants want to be clear that we do not by any means suggest here that the Rosen Law Firm was complicit in the scheme or has been or is engaged in any impropriety beyond filing a frivolous complaint.

[4] In fact, even a modest investigation of publicly-available information before filing the complaint would have revealed that the assertions in the article – such as the Company's offices are "empty" – were false, even defamatory. *See* Seiffert, Don. "My Visit to Cellceutix, the Biotech That a Short Seller Recently Called a Sham." Boston Business Journal., 16 Aug. 2015. 21 Oct. 2015. <http://www.bizjournals.com/boston/blog/bioflash/2015/08/my-visit-to-cellceutix-the-biotech-that-a-short.html>.

[5] The Rosen Law Firm also suggested that the Rule 11 Motion was deficient because it was not signed by a member of the New York bar at the time. Notwithstanding that the PSLRA sanctions provision forecloses the kind of safe harbor typically afforded in Rule 11(c)(2) because "the statute itself puts litigants on notice that the court must (and therefore will) make Rule 11 findings at the conclusion of private litigations arising under the federal securities laws," *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143 (2d. Cir. 2009), Defendants provided more

*Procedural History*

Proposed lead counsel filed the original complaint on September 11, 2015, on behalf of Nicole O'Connell (individually and on behalf of all persons similarly situated), as well as a Plaintiff's class notice. Dkt. 1, 11. Proposed lead counsel identified a former client, Gary Zagami (proposed lead plaintiff), on August 7, 2015, and filed an amended complaint on his behalf (individually and on behalf of all persons similarly situated) on September 24, 2015. Dkt. 10.[6]

On October 29, 2015, this Court entered deadlines for the filing of motions by potential lead plaintiffs and oppositions thereto. Dkt. 13. The Court also scheduled a conference to consider any motions for appointment of lead plaintiff and lead counsel on December 18, 2015.

Proposed lead counsel has been the only plaintiffs' law firm involved in the case since the beginning, and filed the only motion to be appointed lead plaintiff and counsel. Dkt. 14.

## I. THIS COURT SHOULD EXPEDITE CONSIDERATION AND APPOINTMENT OF PSLRA LEAD PLAINTIFF AND LEAD COUNSEL

Congress enacted the PSLRA in 1995 to "combat abusive and extortionate securities class actions," largely driven by lawyers. *In re Herald*, 730 F.3d 112, 117 (2d Cir. 2013). The PSLRA imposes "a heightened bar for such litigation," *Ring v. AXA Financial, Inc.*, 483 F.3d 95, 97 (2d Cir. 2007), and provides protections to companies through mandatory pre-filing certifications, *see* 15 U.S.C. §78u-4(a)(2)(A)(i)-(vi), deadlines for the appointment of lead plaintiff, §78u-4(a)(3)(B), and a discovery stay during the pendency of any motion to dismiss, *see* §78u-4(b)(3). It also provides for mandatory review and sanctions for frivolous lawsuits, *see* §78u-4(c)(1)&(2), and heightened pleading requirements in certain actions, *see* §78u-4(b).

Defendants respectfully seek to expedite consideration and appointment of a lead plaintiff and lead counsel under the PSLRA in advance of the deadlines set forth in this Court's Order dated October 29, 2015. Defendants have suffered and continue to suffer significant harm due to the pendency of this lawsuit, which it believes is frivolous and which, along with the article discussed above, has drastically impacted Cellceutix's stock price and valuation, has caused it to expend significant financial resources to investigate and defend this action, and has jeopardized the profound public interest in the development of life-extending and life-saving drugs.

In making this request, Defendants do not necessarily object to this Court's appointment of proposed lead plaintiff Gary G. Zagami as lead plaintiff and the Rosen Law Firm as lead counsel. With that said, as an officer of the court, Defendants' counsel feels obligated to bring one matter to the Court's attention. Specifically, the two "Certifications and Authorizations of Named Plaintiff pursuant to Federal Securities Laws" filed by proposed lead plaintiff and proposed lead counsel and required by the PSLRA appear to contain some irregularities.

---

than sufficient notice, *see Star Mark Mgmt v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d. Cir. 2012), the signatory has since been admitted *pro hac vice* (Dkt. 17), rendering it sufficient *nunc pro tunc* for notice purposes, and, in any event, Defendants have re-served the Motion to avoid further dispute.

[6] Proposed lead plaintiff was the lead plaintiff in another securities class action filed and then settled by the Rosen Law Firm in 2009. *See Zagami v. Natural Health Trends Corp.*, 3-06-CV-1654-D (N.D. Tex. 2009).

The Certification included with the original complaint was signed by Nicole F. O'Connell, purportedly on August 6, 2015. Dkt. 1. The Certification included with the first amended complaint was signed by Gary G. Zagami, purportedly on August 7, 2015. Dkt. 10. Both plaintiffs "declare[d] under penalty of perjury, under the laws of the United States, that the information entered is accurate." Dkt. 1, 10.

Those two dates are suspect because as part of the required PSLRA certifications, a plaintiff is required to certify that "1. Plaintiff has reviewed the complaint and authorized its filing." Dkt. 1, 10. Given that the article relied upon and that formed the basis of Plaintiff's complaint was posted online on August 6, 2015, it does not seem credible that either plaintiff reviewed their respective complaints at the time they made the certifications on August 6 & 7.

Unless the Rosen Law Firm is now going to claim a mistake regarding both of the dates the plaintiffs signed and certified, this may mean that both individuals may have committed perjury, and that it may have filed certifications they knew or should have known to be false.

On the other hand, if the two plaintiffs somehow did review the complaint prior to certification, it is equally troubling because it means either: (a) the Rosen Law Firm prepared the complaint in a matter of hours, showing that it failed to make a reasonable inquiry under Rule 11 (which would not be surprising because its assertions are demonstrably false); or (b) the Rosen Law Firm knew about the article and had a copy before it was posted online, thereby showing at a minimum that lawyers at the Rosen Law Firm either knew personally or were in touch with the anonymous author who Defendants believe is complicit in perpetrating securities fraud.

Subject to the foregoing, Defendants have no objection to the appointment of proposed lead plaintiff and lead counsel as expeditiously as possible, assuming of course that this Court is satisfied with any resolution of the issue identified immediately above.

## II. THIS COURT SHOULD ENTER A SCHEDULING ORDER THAT DENIES PROPOSED LEAD COUNSEL LEAVE TO FILE A THIRD COMPLAINT

A pleading may be amended once as a matter of right before a responsive pleading has been served. Fed. R. Civ. Proc. 15(a)(1). In this case, proposed lead counsel has amended the class action complaint once (Dkt. 10) and needs leave to do so again. Fed. R. Civ. Proc. 15(a)(2). While leave shall be "freely granted," this Court has discretion to deny leave to amend if there is a good reason for the denial, including "futility, bad faith, undue delay, or undue prejudice to the opposing party." *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

Here, this Court should exercise its discretion to deny lead counsel leave to file a third complaint in this case, and instead should treat the amended complaint filed on behalf of the proposed lead plaintiff on September 24, 2015, as the operative complaint. Defendants respectfully submit that this Court should reach this conclusion for four reasons.

First, although a PSLRA lead plaintiff often times files an amended complaint after appointment, the rationale supporting the filing of an amended complaint is conspicuously absent here. In many PSLRA cases, more than one law firm with more than one plaintiff is vying to be appointed lead plaintiff and lead counsel. Many other PSLRA cases begin as separate actions in different jurisdictions that find themselves consolidated and assigned to a district court judge.

In such cases, after the court makes a lead plaintiff determination – which under the PSLRA is not the first to file a complaint, but rather presumed to be the one with the largest financial interest – we acknowledge that it would be unfair (and perhaps at times unethical) for lead counsel to be burdened with the allegations found in the original complaint (drafted and filed by another law firm and on behalf of a different named plaintiff), or otherwise be denied the opportunity to assert facts related to their plaintiff, particularly with respect to financial loss.

But that is not remotely the case here. To the contrary: (1) proposed lead counsel filed the original complaint and has been the only law firm involved in this case from the beginning; (2) proposed lead plaintiff is the only party moving this Court for appointment; (3) proposed lead counsel already has filed an amended complaint once on behalf of the class; (4) proposed lead plaintiff and counsel have had over three months (since August 7, the date of the lead plaintiff's certification that he reviewed the complaint) to file a legitimate complaint that contains information beyond simply relying on assertions in an article posted online by a short seller; and (5) proposed lead plaintiff and counsel face none of the challenges faced in other PSLRA cases.

Second, granting leave to amend simply by virtue and operation of appointment under the PSLRA would improperly reward and benefit lead plaintiff and lead counsel for undue delay and possibly bad faith. This would undermine the very purpose of the PSLRA, which was intended to discourage frivolous lawsuits and to "combat abusive and extortionate securities class actions." *In re Herald*, 730 F.3d at 117. Put another way, Congress never intended the PSLRA to benefit and be used by class action plaintiffs as a sword, but rather by defendants as a shield.

Third, granting leave to amend would be inconsistent with Rule 11 and its safe harbor provisions. Defendants provided notice of their intention to seek Rule 11 sanctions, and offered proposed lead counsel the opportunity to withdraw the amended complaint on or about October 23, 2015. To allow them additional time and opportunity to make new allegations to cure the deficiencies in the amended complaint – which should never have been filed in the first place, which could have been done anytime within the last three months, and which at the very least should have been done within 21 days of Defendants' notice to seek sanctions – undermines the important goals underlying Rule 11 and spirit of its safe harbor.

Fourth, granting leave to amend would unduly prejudice Defendants. Cellceutix is a small emerging biotech in a very competitive and costly field. Defendants have finite resources and have incurred significant legal fees to defend this litigation. The Company wants nothing more than to conclude this litigation promptly so it will have the opportunity to focus on its important mission, and rebuild from the "short attack" and the frivolous complaints filed in this matter.

Based on the foregoing, Defendants have attached a [Proposed] Scheduling Order granting the relief requested herein. Plaintiff previously filed with this Court a [Proposed] Order Appointing Lead Plaintiff and Lead Counsel (Dkt. 14) on November 10, 2015.

                                                            Respectfully Submitted,

                                      By:    /s/ Michael J. Sullivan
                                              MICHAEL J. SULLIVAN

cc: All counsel of record by ECF

Application DENIED.  The Court will hear the parties regarding scheduling and any proposed motions at the conference currently scheduled for December 18, 2015.  The parties are further directed to the Court's Individual Rules of Practice in Civil Cases, particularly, as relevant here, Rule 4(A).

Dated:   November 20, 2015          SO ORDERED.
         New York, New York

*Katherine Polk Failla*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE