**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

GARY ZAGAMI, Individually and on Behalf
of all Others Similarly Situated,

    Plaintiff,

v.

CELLCEUTIX CORPORATION, LEO
EHRLICH, AND KRISHNA MENON,

    Defendants.

———————————————————————

)
)
)
)
)  **Case No. 1:15-cv-7194 (KPF)**
)
)
)
)  **ORAL ARGUMENT REQUESTED**
)
)
)
)
)
)
)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**REQUEST FOR FINDING OF "ABUSIVE LITIGATION" PURSUANT TO**
**THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995**

**The Ashcroft Law Firm, LLC**
Michael J. Sullivan, Esq.
200 State Street, 7th Floor
Boston, MA  02109
Tel:  (617) 573-9400
Fax:  (617) 933-7607
MSullivan@Ashcroftlawfirm.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ...........................................................................................................1

The Private Securities Litigation Reform Act of 1995 ......................................................1

PSLRA "Sanctions for abusive litigation" Provision ........................................................3

Brief Case History...............................................................................................................8

Summary of Argument .....................................................................................................11

I.  THIS COURT SHOULD AWARD FULL SANCTIONS TO DEFENDANTS
    BECAUSE THIS CASE CONSTITUTES "ABUSIVE LITIGATION" UNDER
    THE PRIVATE SECURITIES LITIGATION REFORM ACT ................................12

   A.   The Rosen Law Firm Substantially Failed to Comply with Rule 11(b) When It Filed
        the Original Complaint & Amended Complaint ............................................14

        1.      No Reasonable Inquiry ...................................................................14

        2.      Not Warranted By Existing Law.....................................................16

        3.      The Failure to Comply Was Substantial .........................................19

   B.   The Rosen Law Firm Substantially Failed to Comply with Rule 11(b) When It Filed
        the Second Amended Complaint  ...................................................................20

        1.      Numerous Factual Contentions in the SAC Lacked Evidentiary Support and
                Many of the Legal Contentions Were Unsupported by Existing Law..................20

        2.      The Failure to Comply Was Substantial .........................................22

   C.   Taken as a Whole, this Lawsuit Constitutes Abusive Litigation Under the PSLRA.........22

II. ALTERNATIVELY, THIS COURT SHOULD AWARD PARTIAL SANCTIONS
    FOR EACH INDEPENDENT FAILURE TO COMPLY WITH RULE 11(B) .....................25

Conclusion .........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashland Inc. v. Morgan Stanley & Co.*,
  652 F.3d 333 (2d Cir. 2011) ................................................................................. 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  579 F.3d 143 (2d Cir. 2009) ..................................................... 4, 5, 14, 15, 19

*Brown v. E.F. Hutton Grp., Inc.*,
  991 F.2d 1020 (2d Cir. 1993) ................................................................................ 19

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .......................................................................................... 14, 15

*Corroon v. Reeve*,
  258 F.3d 86 (2d Cir. 2001) ..................................................................................... 17

*Eastway Constr. Corp. v. City of N.Y.*,
  762 F.2d 243 (2d Cir. 1985) ................................................................................... 14

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994) ............................................................................. 13, 15

*Gurary v. Nu–Tech Bio–Med, Inc.*,
  303 F.3d 212 (2d Cir. 2002) .......................................................................... *passim*

*In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*,
  712 F.Supp2d 255 (S.D.N.Y. 2010) .................................................................. 6, 23

*In re Herald*,
  730 F.3d 112 (2d Cir. 2013) ..................................................................................... 2

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ................................................................................................ 18

*Kleinman v. Elan Corp., plc*,
  706 F.3d 145 (2d Cir. 2013) ....................................................................... 18, 21, 22

*Nanoviricides v. Seeking Alpha, Inc.*,
  2014 WL 2930753 (N.Y. Sup. Jun. 26, 2014) ...................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................ 15

*Unite Here v. Cintas Corp.*,
  500 F.Supp.2d 332 (S.D.N.Y. 2007) ................................................................................. 5

**Statutes**

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

15 U.S.C. §78u-4(a)(2)(A)(i)-(vi) .......................................................................... 3

15 U.S.C. §78u-4(b)(2) ............................................................................ 3, 15, 19

15 U.S.C. §78u-4(b)(2)(A) ...................................................................................... 3

15 U.S.C. §78u-4(b)(3) ........................................................................................... 3

15 U.S.C. §78u-4(c) ..................................................................... 1, 3, 4, 6, 11

15 U.S.C. §78u-4(c)(1) ....................................................................................... 3, 13

15 U.S.C. §78u-4(c)(2) ........................................................................................... 3

15 U.S.C. §78u-4(c)(3)(A)(ii) ......................................................................... 5, 19

15 U.S.C. §78u-4(c)(3)(B)(i) .................................................................................. 8

15 U.S.C. §78u-5 ................................................................................................... 3

**Other Authorities**

Securities Litigation Reform, *Joint Explanatory Statement of the*
  *Committee of Conference*, H.R. CONF. REP. NO. 104-396 (1995) .................................... *passim*

**Rules**

Rule 11(b) ........................................................................................................ *passim*

Rule 11(b)(2) ............................................................................................. 14, 17, 20

Rule 11(b)(3) ....................................................................................................... 20

Cellceutix Corporation, Leo Ehrlich, and Krishna Menon (collectively, the "Defendants") respectfully submit this Memorandum of Law in support of their Request for Finding of "Abusive Litigation" pursuant to the Private Securities Litigation Reform Act of 1995.

## Preliminary Statement

Although this issue is being briefed as a "motion for sanctions," Dkt. 59, Defendants are technically not moving this Court for sanctions under Rule 11. Instead, and as previously discussed, Defendants are requesting this Court to make a mandatory finding under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), that the Rosen Law Firm and its clients failed to comply with their Rule 11(b) obligations and engaged in "abusive litigation," thus entitling Defendants to sanctions. *See* 15 U.S.C. §78u-4(c) ("Sanctions for abusive litigation"). This conclusion is overwhelmingly supported, if not compelled, by the text, spirit, and policy underlying the PSLRA and its sanctions provision, which Congress intended to fundamentally change courts' approach to sanctions in cases brought under the statute.

## The Private Securities Litigation Reform Act of 1995

In enacting the PSLRA, Congress's goal was to curb abusive practices committed in private securities litigation, many of which are presented by this very case:

> (1) the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action; (2) the targeting of deep pocket defendants . . .; (3) the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle; and (4) the manipulation by class action lawyers of the clients whom they purportedly represent. These serious injuries to innocent parties are compounded by the reluctance of many judges to impose sanctions under Federal Rule of Civil Procedure 11, except in those cases involving truly outrageous misconduct.

Securities Litigation Reform, *Joint Explanatory Statement of the Committee of Conference*, H.R.

CONF. REP. NO. 104-396, at 31 (1995) ("*Committee PSLRA Statement*") (attached as Ex. 1).

These systemic abuses were a direct consequence of a securities practice that was not

investor-driven, but rather lawyer-driven. *Accord In re Herald*, 730 F.3d 112, 116 (2d Cir. 2013)

(PSLRA enacted to "combat abusive and extortionate securities class actions"). Instead of being

"an indispensable tool with which defrauded investors can recover their losses without having to

rely upon government action," the securities legal system had been, in Congress's view,

"undermined by those who seek to line their own pockets by bringing abusive and meritless

suits." *Committee PSLRA Statement*, at 31. In particular, Congress, among other things, was:

> troubled by the plaintiffs' lawyers "race to the courthouse" to be the first to file a
> securities class action complaint. This race has caused plaintiffs' attorneys to
> become fleet of foot and sleight of hand. Most often speed has replaced diligence
> in drafting complaints.

*Id*. at 33. In addition, Congress observed that "many of the 'world's unluckiest investors'

repeatedly appear as lead plaintiffs in securities class action lawsuits," *Committee PSLRA*

*Statement*, at 32-33, and there was a "need to reform abuses involving the use of 'professional

plaintiffs' and the race to the courthouse to file the complaint." *Id*. at 32.

Of particular relevance here, Congress further recognized that then-current practices

involving Rule 11 did not adequately address these problems:

> Existing Rule 11 has not deterred abusive securities litigation. Courts often fail to
> impose Rule 11 sanctions even where such sanctions are warranted. When
> sanctions are awarded, they are generally insufficient to make whole the victim of
> a Rule 11 violation: the amount of the sanction is limited to an amount that the
> court deems sufficient to deter repetition of the sanctioned conduct, rather than
> imposing a sanction that equals the costs imposed on the victim by the violation.
> Finally, courts have been unable to apply Rule 11 to the complaint in such a way
> that the victim of the ensuing lawsuit is compensated for all attorneys' fees and
> costs incurred in the entire action.

*Committee PSLRA Statement*, at 39; *accord Gurary v. Nu–Tech Bio–Med, Inc.*, 303 F.3d 212, 215 (2d Cir. 2002) ("The PSLRA dictates sanctions for frivolous securities fraud complaints and emphasizes the need not only to deter such abusive lawsuits, but also to compensate fully victims of this kind of abusive litigation.").

The result was, of course, the PSLRA, which, among other things, protects "investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities." *Committee PSLRA Statement*, at 32. It also subjects private securities fraud claims to a heightened pleading standard by ensuring that the circumstances constituting fraud are alleged with particularity, and by providing that "with respect to each act or omission alleged," a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. §78u–4(b)(2)(A). The PSLRA provides additional protections to defendants through mandatory pre-filing certifications by plaintiffs, *see* 15 U.S.C. §78u-4(a)(2)(A)(i)-(vi), a safe harbor for forwarding looking statements, *see* 15 U.S.C. §78u-5, and to help deter coercive settlements, a discovery stay during the pendency of any motion to dismiss, *see* 15 U.S.C. §78u-4(b)(3). Most relevant here, the PSLRA also created a new enforcement mechanism that provides for mandatory review and sanctions for "abusive litigation." *see* 15 U.S.C. §78u-4(c)(1) & (2).

### PSLRA "Sanctions for abusive litigation" Provision

To help implement its important public policy goals, Congress included in the PSLRA a measure that would become 15 U.S.C. §78u-4(c) ("Sanctions for abusive litigation"). Put simply, that section "gives teeth to Rule 11," and it dramatically alters the sanctions approach courts must take in PSLRA cases in at least five respects. *See Committee PSLRA Statement*, at 39; *Gurary*, 303 F.3d at 215 ("Responding to what it perceived to be an unwillingness on the part of

- 3 -

courts to impose discretionary sanctions on parties who brought abusive securities fraud lawsuits, Congress passed Section 21D(c) of the [PSLRA], 15 U.S.C. §78u–4(c)."); *id.* at 221 (courts must be "bound by the mandates of the PSLRA, [otherwise] courts would be free to engage in the ordinary Rule 11 analysis, which Congress found too often resulted in the failure to compensate fully victims of abusive securities litigation").

*First*, through the sanctions provision, Congress's intent was "to impose upon courts the affirmative duty to scrutinize filings closely and to sanction attorneys or parties whenever their conduct violates Rule 11(b)." *Committee PSLRA Statement*, at 40; *see also Gurary*, 303 F.3d at 223 (quoting same). Consequently, unlike Rule 11, the sanctions provision "*requires* district courts, at the conclusion of private actions arising under federal securities laws, to make Rule 11 findings as to each party and each attorney, ... and if a Rule 11 violation is found, the statute *requires* courts to impose sanctions." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) (internal citations omitted) (emphasis in original) ("*ATSI*").

*Second*, recognizing that the costs of litigation often forces "innocent parties to settle frivolous securities class actions," Congress sought to protect defendants through a discovery stay during the motion to dismiss stage, and, ***more importantly, empower defendants to zealously defend against meritless claims by "imposing a sanction that equals the costs imposed."*** *Committee PSLRA Statement*, at 37 (emphasis added); *accord Gurary*, 303 F.3d at 220. Congress thus included, in the event any failure to comply with Rule 11(b) is "substantial," a statutory presumption that the award to the prevailing party would be *full* attorneys' fees and expenses incurred in the action:

> when an abusive or frivolous action is maintained, it is manifestly unjust for the victim of the violation to bear substantial attorneys' fees. The Conference Committee recognizes that little in the way of justice can be achieved by attempting to compensate the prevailing party for lost time and such other

measures of damages as injury to reputation; hence it has written into law the presumption that a prevailing party should not have the cost of attorney's fees added as insult to the underlying injury.

*Committee PSLRA Statement*, at 40; *see* 15 U.S.C. §78u-4 (c)(3)(A) ("the court shall adopt a presumption that the appropriate sanction … for substantial failure of ***any complaint*** to comply with ***any requirement*** of Rule 11(b) … is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action") (emphases added). In instances where a violation occurred, but the failure was not substantial, partial sanctions "to punish not the bringing of the whole suit, but only of the frivolous claim" are awarded. *Gurary*, 303 F.3d at 222.

    *Third*, although the PSLRA does not alter the substantive standards for finding a violation of Rule 11, Congress eliminated Rule 11's traditional "safe harbor." *See ATSI*, 579 F.3d at 146-47, 152 (no safe harbor exists for cases brought under the PSLRA because "the statute itself puts litigants on notice that the court must (and therefore will) make Rule 11 findings at the conclusion of private litigations arising under the federal securities laws"). Accordingly, litigants and counsel pursue securities claims at their peril and with an increased risk of having sanctions imposed against them, including based upon the filing of the initial complaint. *See id.* at 152 ("The express congressional purpose of the PSLRA provision was to increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of frivolous securities claims.").[1]

    *Fourth*, under the PSLRA, neither an amended complaint, nor new factual or legal contentions, will "overwrite" or cure noncompliance in an earlier pleading, as they might in an

---

[1] Having said that – and whether Congress intended or appreciated this result or not – voluntary dismissal of a complaint before a disposition on the merits may allow a party to avoid sanctions because some courts have concluded that mandatory PSLRA review is not triggered in those circumstances. *See* 15 U.S.C. 78u-4(c)(1) ( "upon final adjudication of the action, the court shall include in the record specific findings"); *Unite Here v. Cintas Corp.*, 500 F.Supp.2d 332 (S.D.N.Y. 2007) (no "final adjudication" where complaint is voluntarily dismissed).

ordinary Rule 11 case. *See In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*, 712 F.Supp2d 255, 266 (S.D.N.Y. 2010) ("Plaintiff's counsel have identified no authority for the proposition that the filing of an amended complaint overwrites a Rule 11 violation contained in an original pleading and thereby prevents the imposition of sanctions under the PSLRA."). In fact, Congress explicitly envisioned the opposite result when it: (1) made the PSLRA mandatory finding and award extend to *any* complaint filed in the matter, 15 U.S.C. §78u-4(c)(1) & (2); (2) eliminated any "safe harbor" for litigants; (3) intended to increase the frequency of Rule 11 sanctions; and (4) stated its goal of deterring the abusive pattern and practice of filing securities lawsuits against "deep pocket defendants," "whenever there is a significant change" in stock price, "with only faint hope" that a "plausible cause of action" exists. *Committee PSLRA Statement*, at 31.

*Fifth*, Congress did not limit sanctions under the PSLRA to "frivolous claims," but rather more broadly authorized full sanctions for "abusive litigation." 15 U.S.C. §78u-4(c) (title). As a practical matter, this means that the existence of nonfrivolous claims will not preclude a finding of a "substantial failure" to comply with Rule 11(b). In fact, the *Gurary* Court expressly rejected any interpretation to the contrary, finding it would undermine the purpose of the PSLRA:

> Appellant [] argues that a complaint containing any nonfrivolous allegation (a) is not a substantial violation that gives rise to the PSLRA's presumption, and, (b) even if it were, falls both within the de minimis and the unreasonable burden defenses. But to accept these contentions would permit the very mischief that Congress manifestly intended to prohibit. Plaintiffs could avoid mandatory sanctions, and return to the prior discretionary regime, simply by including one colorable claim amid a myriad of abusive allegations.

*Gurary*, 303 F.3d at 221. Instead, the *Gurary* Court ruled that in cases where both frivolous and nonfrivolous claims exist:

> A substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive. Under this interpretation, the district court must examine the

> qualitative substance of the nonfrivolous claims in order to assess whether these claims were, in fact, legitimate filings that had the potential of prevailing or whether they patently lacked merit and only narrowly avoided being deemed frivolous themselves.

*Gurary*, 303 F.3d at 222. Consistent with the PSLRA, once any failure to comply is found, this Court must presume that the litigation, as a whole, is abusive unless rebutted by a finding that the nonfrivolous claims are "quality" or "weighty" claims:

> To summarize: in cases of this sort, the district court must first determine whether frivolous claims in violation of Rule 11 have been brought. If they have, the court must examine whether nonfrivolous claims have been joined and, if so, whether these claims – whatever their number – are of a quality sufficient to make the suit as a whole nonabusive and the Rule 11 violation not substantial. If no such weighty nonfrivolous claims are attached, the statutory presumption applies.

*Gurary*, 303 F.3d at 223.

To help make such a determination, the *Gurary* Court contrasted the different types of nonfrivolous claims that may be present along with frivolous claims:

> A securities complaint may, however, present frivolous claims joined with nonfrivolous claims in a wide variety of ways, including the combination of frivolous claims with (1) valid, winning claims; (2) claims lost before a jury but which are meritorious enough to survive summary dismissal; (3) claims that, though properly dismissed at summary judgment because capable of resolution as a matter of law, presented novel legal issues that could well have gone in the plaintiff's favor; ***and (4) summarily dismissed claims that, while not legally frivolous, lack any merit***.

*Gurary*, 303 F.3d at 220-21 (emphasis added). With respect to the last type of nonfrivolous claim – ones dismissed as meritless, but perhaps not legally frivolous in and of themselves – the *Gurary* Court concluded that their presence would be insufficient as a matter of law to overcome the presumption that the lawsuit as a whole is abusive:

> if summary judgment had been granted because the nonfrivolous claims were altogether meritless, and presented no plausible novel legal or factual contentions, the complaint as a whole would properly be viewed as prima facie abusive and,

hence, as substantially failing to comply with Rule 11. Such a complaint would not avoid the statutory presumption that a penalty of full fees and costs is appropriate.

*Gurary*, 303 F.3d at 222-23.

Once a lawsuit is found to be abusive, the statutory presumption of full attorneys' fees and costs applies. The only way a party may avoid full sanctions is to show it was somehow de minimis, or whether:

Alternatively, financial statements or other relevant evidence may establish that the full sanction award unjustly creates an unreasonable burden on the sanctioned party and that a partial award would not "impose a greater burden on the party in whose favor sanctions are to be imposed." § 78u–4(c)(3)(B)(i).

*Gurary*, 303 F.3d at 223. If either can be shown, the presumption is rebutted, and, while full sanctions may not be warranted, partial sanctions should be awarded.

### *Brief Case History*

On August 6, 2015, at 10:30 AM, an anonymous short seller using the pseudonym "Mako Research" posted a scathing article about Defendants, a clinical stage biotechnology company, on the website *Seeking Alpha*. Dkt. 39-1 ("Cellceutix: Empty Office, Unviable 'Science', Misleading Disclosures, 96% Downside"). Multiple "articles" posted by Mako Research on the same website make the same false claims that that the target company's office is empty, its sciences or products are "failed" or "unviable," and the company is associated with questionable individuals. Dkt. 51-1 (Rule 11 Letter to the Rosen Law Firm), at 2-3 (attached as Ex. 2).

Two hours later, on August 6, 2015, at 12:41 PM, reminiscent of a "race to the courthouse," the Rosen Law Firm released an "Equity Alert" announcing that it was "preparing a class action lawsuit to recover losses suffered by Cellceutix investors" as a result of the Company's materially false and misleading statements. Dkt 39-18 (Equity Alert). The Equity Alert encouraged purchasers who bought stock before that date to contact the law firm.

Cellceutix's stock price – which opened at $2.47 – lost approximately 30% of its value, closing at $1.71.

Sometime that same day, on August 6, 2015, and then on the following day, August 7, 2015, two individuals (the original plaintiff, and future Lead Plaintiff, Gary Zagami, a former Rosen Law Firm client) answered the law firm's call. Dkt. 1-1 (PSLRA Cert. for Compl.); Dkt. 10-1 (PSLRA Cert. for Am. Compl.); 12/18/2015 Tr. 3:1-3 (THE COURT: "Is he [Mr. Zagami] just unlucky, sir, that he has bought securities that have required him twice to be involved in class action litigation?") (Initial Pre-Trial Conference and PSLRA Hearing). In the required PSLRA certification, made under the pains of perjury, the two putative class action plaintiffs – implausibly in Defendants' view – swore that they had reviewed and authorized the filing of the complaint. A counsel with the Rosen Law Firm now concedes that he "believe[s] there was an initial draft." 7/15/2016 Tr. 7:17 (Sanctions Conference); *see also* 7/15/2016 Tr. 8:20-21 (THE COURT: "I'm not sure what kind of due diligence you can do in several hours."). Seeking to explain the same questionable circumstances, a different counsel claims that they "didn't file the complaint right away" and "wanted to check it out." 12/18/2015 Tr. 7:16-17.

On September 11, 2015, the Rosen Law Firm filed the initial complaint. Dkt. 1 (the "original complaint"). Roughly two weeks later, on September 24, 2015, it filed the same complaint substituting in the former client. Dkt. 10 (the "amended complaint"). Substantively, both the original complaint and amended complaint did nothing more than to repeat the assertions in the anonymous on-line posting without any additional or corroborating support, a practice the PSLRA intended to deter and sanction. Even under these circumstances, the Rosen Law Firm was reluctant to agree to an *in camera* submission to show the claimed "substantial due diligence done in the ensuing month." 7/15/2016 Tr. 8:15-16.

- 9 -

Shortly after being contacted by the Rosen Law Firm, counsel for Defendants, on or about October 23, 2015, sent a 14-page communication explaining why it was unreasonable for the Rosen Law Firm to rely upon the on-line posting as a basis for filing a federal class action, *see* Ex. 2, at 6-8, and that a reasonable inquiry would have shown that the complaint as whole was legally and factually deficient and should be dismissed, *id*. at 9-12, 14. Instead of withdrawing the amended complaint, the Rosen Law Firm opted to continue to pursue Defendants with its class action lawsuit. At a December 18, 2015, hearing, this Court appointed Mr. Zagami as Lead Plaintiff, and the Rosen Law Firm, who filed the only motion for appointment, *see* Dkt. 14 (Mtn. for Appt.), as Lead Counsel. After hearing argument, the Court granted leave to amend and to file a third complaint in this matter. *See* Dkt. 24 (12/18/15 Order).

On January 11, 2016, the Rosen Law Firm filed the Second Amended Complaint ("SAC"). This pleading cobbled together a myriad of misrepresentation claims, primarily based on scientific opinions and information regarding the operation of Defendants' drugs. These claims were not legitimate claims; in fact they lacked any merit whatsoever, in many cases were both factually and legally deficient, and appear to have been brought to survive a motion to dismiss and to attempt to avoid sanctions. Defendants moved to dismiss and, in most cases, supplied the Court with at least five independent reasons why each claim could be dismissed. Dkt. 37 (Defs.' Br. in Support of Motion to Dismiss), at 3-5 (Chart).

On June 8, 2016, this Court dismissed the SAC with prejudice, and denied leave to file another complaint because "any further repleading would be futile." Dkt. 49 (Opinion ("Op.")), at 39. The Court found that all of the claims were refuted by publicly-available documents represented to have been reviewed before filing, or by a fair reading of the documents forming the basis of the claim, or by well-established precedent. *See infra* at pp. 20-22 (chart).

- 10 -

### *Summary of Argument*

In stark contrast to what Congress intended when it enacted the PSLRA, this case all but began with a "race to the courthouse," where "speed [] replaced diligence in drafting complaints," all to file a class action securities complaint "with only faint hope" that it "might lead eventually to some plausible cause of action." *Committee PSLRA Statement*, at 31, 33. Then, through the undeniable and quintessential "lawyer-driven" conduct by the Rosen Law Firm, this lawsuit became an "abusive litigation" as that term is used in the PSLRA. 15 U.S.C. §78u-4(c).

At every stage of this litigation, the Rosen Law Firm had an opportunity to walk away from a complaint that should have never been filed in the first place. At each juncture, the Rosen Law Firm – with either an intentional or reckless disregard of the consequences – decided to press forward nonetheless, cutting procedural and statutory corners, and making allegations and claims that violated Rule 11(b) outright, or, even if not legally frivolous, they either knew, or should have known, lacked any merit. Moreover, even assuming any of the eleventh-hour claims in the dismissed complaint were not legally frivolous, the conclusion is inescapable that, but for the earlier decisions and conduct of the Rosen Law Firm, Defendants never would have been put in a position to defend against them. Taken as a whole – as Second Circuit precedent instructs – the circumstances from start to finish overwhelming supports finding that the litigation was abusive, thus entitling Defendants to a rebuttable presumption of full costs and attorneys' fees. Any other result would be contrary to the text, spirit and purpose of the PSLRA.

Defendants recognize – as did Congress when enacting the PSLRA – that courts often are hesitant to impose sanctions, particularly against law firms. Not only did the PSLRA change that, but many of primary considerations underlying that general reluctance are absent here. For instance, the Rosen Law Firm did not base the complaint(s) it filed on the reasonable factual

representations of its client(s). To the contrary, the complaints contain *no* information supplied by each of the individual plaintiffs. Nor was the Rosen Law Firm approached by a plaintiff-investor and asked to investigate a claim and file a securities complaint on his or her behalf. Rather, the Rosen Law Firm read a posting on the internet, solicited prospective clients, and, worse yet, had them affirm and file – under pains of perjury – a PSLRA certification within hours of that on-line posting. At any time, the Rosen Law Firm could have sought voluntary dismissal of the complaint, and avoided the possible award of PSLRA sanctions, or, at the very least limited both Defendants' costs and the Rosen law Firm's exposure. It opted not to, instead continuing its pursuit, causing Defendants to incur substantial financial losses, attorneys' fees, and reputational harm.

This Court should not incentivize such conduct, and instead should send a strong message that, as Congress intended, the PSLRA "gives teeth to Rule 11." Otherwise, Congress's intent in enacting the PSLRA – to "reduce significantly the filing of meritless securities lawsuits" and "to protect investors and to maintain confidence in the securities markets" – may be somewhat of an empty gesture, and the plain language of its sanction provision – largely ignored by many, but not all, courts – may turn out to be nothing but words.

## I.   THIS COURT SHOULD AWARD FULL SANCTIONS TO DEFENDANTS BECAUSE THIS CASE CONSTITUTES "ABUSIVE LITIGATION" UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT

At the outset, Defendants note that, at the July 15, 2016, sanctions conference, this Court candidly stated its limited recent experiences in handling PSLRA matters, 7/15/2016 Tr. 2:5-6, and its initial "inclination is not to impose sanctions." 7/15/2016 Tr. 17:18. The Court's reluctance may be related to both the Court's noted limited experiences and a belief that the legal claims the Rosen Law Firm eventually made in the SAC may have been "very aggressive but not

indefensible." 7/15/2016 Tr. 17:4. Even assuming this were true – a point Defendants certainly

do not concede, *see infra* at pp. 20-22 – this view has no bearing on whether there was a failure

to comply with Rule 11(b) at the time the first two complaints were filed. The PSLRA sanctions

provision squarely forecloses such an analysis because it requires a compliance finding not only

for the final, operative complaint, but rather for each and every complaint filed in the litigation:

> (c) **Sanctions for abusive litigation**
> (1) **Mandatory review by court**
> In any private action arising under this chapter, upon final adjudication of the
> action, the court shall include in the record specific findings regarding
> compliance by each party and each attorney representing any party with each
> requirement of Rule 11(b) of the Federal Rules of Civil Procedure *as to any*
> *complaint*, responsive pleading, or dispositive motion.

15 U.S.C. §78u-(4)(c)(1) (emphasis added); *see also Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274,

1279 (3d Cir. 1994) ("It is also important to observe that when the court examines the

sufficiency of the inquiry into the facts and law, it must avoid drawing on the wisdom of

hindsight and should test the signer's conduct by determining what was reasonable when the

document was submitted."). This understanding is confirmed by the lack of any "safe harbor"

afforded litigants in cases brought under the PSLRA, ***who are already on notice that their***

***conduct will be closely scrutinized for compliance with Rule 11(b).***

Having said that, "in making the mandatory findings under the PSLRA, the district court

should initially determine whether or not a violation of Rule 11 occurred, and if it has, whether

the failure to comply with Rule 11 was ***substantial***." *Gurary*, 303 F.3d at 222 (emphasis in

original). Here, the Rosen Law Firm substantially failed to comply with Rule 11(b) when it filed:

(a) the original and amended complaints (which are substantively identical and the product of the

same lack of due diligence); and (b) the SAC. These failures extended to failing to conduct "an

inquiry reasonable under the circumstances," *see* Rule 11(b), and to making arguments,

particularly in the first two complaints, that had no chance of success and that were not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Rule 11(b)(2). Each of the substantial violations in this case provides an independent basis upon which Defendants are entitled to full sanctions under the PSLRA.

Moreover, even if, in this Court's view, several claims in the SAC, while meritless, are not legally frivolous, those claims are not of sufficient quality or weight to overcome the presumption in the PSLRA that the lawsuit, as a whole, is abusive. Because "abusive litigation" in and of itself represents a substantial failure to comply with Rule 11, the PSLRA statutory presumption of sanctions consisting of full fees and costs applies to this case.

### A. The Rosen Law Firm Substantially Failed to Comply with Rule 11(b) When It Filed the Original Complaint & Amended Complaint

By signing a pleading, motion, or other paper, an attorney is representing that it is not being presented for any improper purpose, the allegations or other factual contentions have evidentiary support, and the legal contentions are warranted by existing law. Rule 11(b); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (stating that Rule 11 is intended to propel an attorney to "stop, think and investigate" before filing) (internal citation omitted). The Rosen Law Firm failed to comply with Rule 11(b) in at least two crucial respects when it filed the complaint and amended complaint, and because it is a case brought under the PSLRA, it is not entitled to any "safe harbor" for its deficient conduct. *ATSI*, 579 F.3d at 150.

#### 1. No Reasonable Inquiry

"Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 253 (2d Cir. 1985). The thoroughness of the Rule 11 inquiry depends to a large extent upon the time available for investigation. *Cooter & Gell*, 496 U.S. at

401-02. ("An inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs."). Rule 11 violations require only a showing of objective unreasonableness on the part of the attorney signing the pleading. *ATSI*, 579 F.3d at 150; *see also id.* at 152 ("[T]he mandate of the [Private Securities Litigation Reform Act] obviates the need to find bad faith prior to the imposition of sanctions.").

Often times, parties are in a difficult position to disprove a negative – in other words, to prove that a law firm did not affirmatively investigate the basis for its claims. In this case, however, Defendants can point to a long list of uncontroverted facts demonstrating an utter lack of reasonable inquiry to ensure the complaints were viable:

- according to the PSLRA certification attested to under the pains of perjury, the complaint and amended complaint were drafted, reviewed and authorized for filing ***in a matter of hours*** following the on-line posting by the anonymous and admittedly biased author, *see* 7/15/2016 Tr. 8:20-21 (THE COURT: "I'm not sure what kind of due diligence you can do in several hours.");

- there were no time constraints to investigate and file the complaints, *see Cooter & Gell*, 496 U.S. at 401-02;

- the original and amended complaint factual allegations were simply cut and pasted from the anonymous on-line posting on *Seeking Alpha*, *see Nanoviricides v. Seeking Alpha, Inc.,* 2014 WL 2930753, at *6 (N.Y. Sup. Jun. 26, 2014) (readers should treat anonymous third-party content on *Seeking Alpha* "as opinion rather than fact"); *Garr*, 22 F.3d at 1280 (attorneys violated Rule 11 by failing to personally investigate the law and facts underlying a securities fraud complaint and instead only relying on a newspaper article, another complaint, and another attorney);

- the original and amended complaint allegations do not appear to contain any factual information from the Rosen Law Firm's purported investigation, or from any other source beyond the on-line posting;

- the original and amended complaint contain no factual allegations – which must be stated with particularity – that give "rise to a strong inference that [Defendants] acted with the required state of mind," *see* 15 U.S.C. §78u–4(b)(2); *Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *accord* Ex. 2, at 13 ("In fact, the complaint does not contain any particular alleged facts that would give rise to a strong inference of scienter.");

- the sole basis for the legal claims in the original complaint and amended complaint is that the assertions in the on-line posting are true, and that Defendants have violated the securities laws, *see* Am. Compl. ¶22 (reproduced *infra*, at p.17);

- by their own admission, the original and amended complaints do not correspond to the statutorily-mandated PSLRA certification filed with the Court, *see* 7/15/2016 Tr. 7:17 ("I believe there was an initial draft"), Tr. 7:8-11 (we "showed the complaint again, the final version, to the plaintiff before filing"), and no other PSLRA certifications have been filed to date; and

- the representation that the Rosen Law Firm included in the complaints claiming to have conducted an inquiry is boilerplate language it regularly uses in securities class action complaints, along with other legal boilerplate language.[2]

The Rosen Law Firm's claimed defense is that it undertook a month of due diligence before it filed the complaints. Given the showing above, the burden should be on the Rosen Law Firm to prove that it provided a "draft" complaint for review and approval within hours of the on-line posting, and that it conducted "an inquiry reasonable under the circumstances," *see* Rule 11(c), as it alone is in possession of information to prove that it did what it represented to the Court. 7/15/16 Tr. 6-21-24. This showing should necessarily include all the steps taken to verify the accuracy of the on-line posting assertions, all the documents reviewed, all individuals relied upon, and, as the Court suggested – which Defendants formally request here – an *in camera* submission that compares the dates and content of the claimed draft complaint(s) that each plaintiff certified on August 6 & 7, to the complaint(s) actually filed on September 11 & 24.

### 2. Not Warranted by Existing Law

Even if the Rosen Law Firm can prove a reasonable inquiry under the circumstances, they nonetheless failed to comply with Rule 11(b), which requires legal contentions to be

---

[2] Based on our investigation and review of publicly-available documents, the same language in the complaint and amended complaint appears in multiple federal securities class actions complaints filed by the Rosen Law Firm throughout the country.

"warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11(b)(2); *Corroon v. Reeve*, 258 F.3d 86, 92 (2d Cir. 2001) ("Rule 11 is violated when it is clear under existing precedents that a pleading has no chance of success and there is no reasonable argument to extend, modify, or reverse the law as it stands."). As with factual contentions, legal contentions are subject to an objective standard.

The legal contentions in the original complaint and amended complaint – which largely are based on purported scientific opinion in the on-line posting – are squarely foreclosed by existing Second Circuit precedent and have no chance of success on the merits. Although it is difficult to discern among (a) the copied text from the on-line posting, Am. Compl. ¶¶17-21, 23-28, (b) the standard legal boilerplate language the Rosen Law Firm uses in securities class action complaints, *id*. ¶¶29-37, and (c) the two broad counts simply alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants, *id*. ¶¶38-47, and violations of Section 20(a) against the Individual Defendants, *id*. 48-53, the legal contentions that the Rosen Law Firm seeks to pursue may be found in paragraph 22, which provides:

> 22. The statements referenced in ¶¶17-21 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, products, and directors' backgrounds, which were known to Defendants or recklessly disregarded by them. **Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Brilacidin is not effective; (2) Kevetrin does not activate the p-53 gene, which is a tumor suppressor; and (3) Defendant Menon did not earn his PhD in Pharmacology from Harvard University**. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

Am. Compl. ¶22 (emphasis added).

Far from being "warranted by existing law," these claims do not comply with Rule 11(b). *First*, a legal claim based on the allegation that "Brilacidin is not effective" is patently frivolous,

and has no chance of success, particularly given the drug's current status in clinical trials. *See Kleinman* v. *Elan Corp., plc*, 706 F.3d 145, 154 (2d Cir. 2013) (scientific opinion is not actionable; "Kleinman (and others) may take issue with Defendants' researchers and scientists, but where a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement."). This is particularly so given the alleged "facts" and purported scientific opinion (all from the on-line posting) upon which it is based:

- Brilacidin would be extremely difficult to commercialize.
- In a phase 2 trial, Brilacidin did not work in 7/8 types of bacterial infection, including the most common types of infection.
- In the remaining 1/8, there is meaningful evidence that Brilacidin will fail.
- Brilacidin causes adverse side effects and will likely not be approved.

\* \* \*

**Brilacidin is simply not effective**

Am. Compl. ¶25 (emphasis in original). Given the inherently frivolous nature of the claim, it is not at all surprising that the Rosen Law Firm later abandoned this claim in the SAC.

*Second*, the legal claim based on an allegation that "Kevetrin does not activate the p-53 gene" also is unequivocally non-actionable medical opinion under *Kleinman*. In fact, alleged scientific opinions like these have ***never*** been a proper basis for a claim of fraud. *Accord* Op. at 29, 32. Counsel with the Rosen Law Firm admitted so much at the sanctions hearing recognizing "the doctrines" against delving into scientific disputes. 7/15/2015 Tr. 11:15-16, 21-22.

*Third*, equally so, the alleged misrepresentation that "Defendant Menon did not earn his PhD in Pharmacology from Harvard University" is foreclosed by precedent of both the Supreme Court of the United States and the Second Circuit. *See Janus Capital Group, Inc.* v. *First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest

what to say, not 'make' a statement in its own right."); *Ashland Inc.* v. *Morgan Stanley & Co.*, 652 F.3d 333, 337-38 (2d Cir. 2011 ("An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.") (quoting *Brown* v. *E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993)). Not only is clear that Menon did not make this statement as the complaints allege, but the claim is unwarranted by existing law because it requires, like another rejected argument made months later in the SAC:

> not only that a reasonable investor would consider Menon's *alma mater* a material fact in determining how to act, but could additionally view Defendants' Forms 10-K from June 2010 through June 2014 [which corrected the information] and still believe, based on a Form 10-K filed five years prior, that Menon received a Ph.D. from Harvard. No reasonable investor would or could have such a belief.

Op. at 19 n.8.

*Fourth*, nor can it reasonably be asserted that any of the arguments in the complaint and amended complaints involve an area of law in a state of flux, address an issue of first impression, or suggest a reasonable effort to seek reversal, modification, or extension of existing law.

*Fifth*, the lack of any allegations pertaining to, let alone supporting, scienter in either complaint, *see* 15 U.S.C. §78u–4(b)(2), reinforces the conclusion that the complaints were based upon speculation and without reasonable legal basis when filed. *Accord ATSI*, 579 F.3d at 153.

As such, none of the legal contentions complies with Rule 11(b).

### 3.   The Failure to Comply Was Substantial

For the two independent reasons discussed above, the filing of the original complaint and amended complaint failed to comply with Rule 11(b), and, either cumulatively, or individually, represented a substantial failure to do so. This conduct entitles Defendants to the statutory presumptions of all fees and costs in the litigation. 15 U.S.C. §78u-4 (c)(3)(A)(ii).

**B. The Rosen Law Firm Substantially Failed to Comply with Rule 11(b) When It Filed the Second Amended Complaint**

Instead of dismissing the lawsuit after it either knew or should have known that any securities claims against the Defendants lacked merit – based upon, for example, the significant skepticism surrounding the anonymous on-line posting (Ex. 2, at 4), the lack of any investors with substantial holdings willing to join the lawsuit (12/18/15 Tr. 4:5-12), the discussion in Defendants' Rule 11 letter (Ex. 2), or what additional four months to investigate should have revealed – the Rosen Law Firm decided to continue to pursue Defendants. To do so, the Rosen Law Firm filed the SAC, and, in so doing, again substantially failed to comply with Rule 11(b).

**1. Numerous Factual Contentions in the SAC Lacked Evidentiary Support, and Many of the Legal Contentions Were Unsupported by Existing Law**

The chart below shows that the factual and legal contentions in the SAC failed to comply with Rule 11(b). For example, numerous factual contentions were false and contradicted by the document upon which the claim relied, violating Rule 11(b)(3), and numerous legal contentions were unsupported by existing law, violating Rule 11(b)(2). In most cases, the factual deficiency only could have come as a result either of the Rosen Law Firm's failure to review the underlying document that formed the basis of the claim, or through a deliberate misrepresentation of the text of the document. Similarly, the SAC legal contentions had no chance of success, and made no reasonable argument for extension or medication of existing law.

| Claims | Factual or Legal Contention | Lack of Evidentiary Support and/or Support in Law |
|---|---|---|
| "False Statement in the *Future Woman* Article" (Op. 12-17) | ¶22. On May 10, 2013, *Future Woman* published a profile article on Defendant Menon, **which he was interviewed for**. (emphasis added). | Allegation is false as the article never states Menon was interviewed for the article. |
| "Defendant Ehrlich Adequately Corrected the False | ¶24. Prior to the Class period, Defendants' 10-K for the year ending June 30, 2009, dated October 8, 2009 | Allegation is false as Defendants corrected the error in its 2010 Form 10-K, and |

| Claims | Factual or Legal Contention | Lack of Evidentiary Support and/or Support in Law |
|---|---|---|
| Statement Made in Cellceutix's 2009 Form 10-K" (Op. 17-19) | falsely claimed that Menon received a PhD from Harvard. Throughout the class period, Ehrlich had a duty to correct this misstatement, *and did not do so.* (emphasis added). | thereafter reported correct information in Forms 10-K from 2011-2015. |
| "Plaintiff Has Failed to State a Claim Concerning Brilacidin's Gram-Negative Coverage" (Op. 22-24) | ¶26. The foregoing statement was false and misleading *because it suggested that Brilacidin could be used to treat gram negative bacteria*, whereas in reality, as defendants conceded in the August 7 Press Release, Defendants conceded that Brilacidin was not being developed for treating gram negative bacteria and was not likely an effective treatment against a broad spectrum of gram negative bacteria. (emphasis added). | Allegation is false and not a fair reading of the poster upon which the claim is based. *See, e.g.*, Op. at 22 ("Contrary to Plaintiff's assertion, the poster does not contradict Defendants' later statement that Brilacidin is 'likely not an effective treatment against a broad spectrum of gram negative bacteria.'"). |
| "Plaintiff Fails to State a Claim Regarding Brilacidin's Antibiotic Properties" (Op. at 25-27) | ¶28. The foregoing statement was false and misleading because, as Defendants admitted in the August 7 Press Release the Mako Report was correct, Brilacidin's alleged antibiotic properties could not be effective in treating oral mucositis. | Allegation makes no difference. *See, e.g.*, Op. at 27 ("Absent some reason why the characterization of Brilacidin's efficacy as stemming from its multiple properties — as opposed to solely from its anti-inflammatory property — was fraudulent, that characterization cannot support a claim for material misrepresentation."). |
| "Plaintiff Fails to State a Claim Regarding Defendants' Representation of p21 as a "Biomarker" in Clinical Trials for Kevetrin" (Op. 28-30) | ¶34. The statements in the foregoing paragraphs were false and misleading because Defendants claimed that P21 was a biomarker, which means in the context of clinical trials that it is indicative of a clinically meaningful outcome for treatment, i.e. reduced mortality of cancer. **In reality, P21 has not been shown to be correlated with improved clinical outcomes for cancer.** (emphasis added). | No chance of success as statement constitutes "non-actionable medical opinion" under *Kleinman* v. *Elan Corp., plc*, 706 F.3d 145, 154 (2d Cir. 2013), and it is well established that "securities law is not 'a tool to second guess how clinical trials are designed and managed' |
| "Plaintiff Fails to State a Claim Regarding the | ¶36. ... Defendants admitted, on August 7, 2015, "*that the patient's CA125 count was elevated* (a common | Allegation is false as January 20, 2015, press release upon which this claim is based, |

| Claims | Factual or Legal Contention | Lack of Evidentiary Support and/or Support in Law |
|---|---|---|
| Kevetrin Trial Patient's Outcome" (Op. 30-32) | occurrence in cancer patients) and she was advised to discontinue the trial by her physician. … Therefore, Defendants' claim that following treatment with Kevetrin the patient's disease became clinically stable was highly misleading." (emphasis added). | shows it had been disclosed: "The idea that a stage 4 ovarian cancer patient's disease was clinically stabilized, *although her CA125 count was increased in the third month*, is remarkable." (emphasis added).<br><br>Statement also constitutes "non-actionable medical opinion" under *Kleinman v. Elan Corp., plc,* 706 F.3d 145, 154 (2d Cir. 2013). |
| Plaintiff Fails to State a Claim Regarding Defendants' Failure to Disclose Material Risks (Op. 32-38) | ¶37. … However, in the 10-K dated September 30, 2013, there was no disclosure that the acquisition of Cellceutix created a new material risk of Cellceutix's inability to fund expensive clinical trials to get Brilacidin through FDA approval, *nor were such risks ever disclosed during the class period*. (emphasis added).<br><br>¶38. Defendants also failed to disclose the material risk of their undertaking a Phase 3 study because none of Defendants' officers had experience in obtaining Phase 3 approval | <u>Allegation is false</u> as Defendants fully disclosed risks of raising capital and lack of clinical trial experience in "Risks" section of Forms 10-K in 2013, 2014, and 2015. The alleged undisclosed risks also were disclosed consistently in press releases, including in ones relied upon in SAC and others claimed to have been reviewed by the Rosen Law Firm prior to filing complaints |

## 2. The Failure to Comply Was Substantial

As with the original and amended complaints, the failures to comply with Rule 11(b) in the SAC were substantial, thus triggering the statutory presumption of full fees and costs.

## C. Taken as a Whole, this Lawsuit Constitutes Abusive Litigation Under the PSLRA

To the extent the Court does not award full fees and costs for the substantial failures to comply with Rule 11(b) when filing each of the complaints, this Court should conclude that, taken as a whole, this lawsuit constitutes "abusive litigation" as that term is used in the PSLRA. The Court should reach this conclusion for at least three reasons.

- 22 -

*First*, the tenuous nature of any non-frivolous claims in this litigation show that they are not "weighty," or of "quality sufficient" to rebut the presumption that the litigation, as a whole, is abusive. *Gurary*, 303 F.3d at 223 (court must assess "whether these claims – whatever their number – are of a quality sufficient to make the suit as a whole nonabusive and the Rule 11 violation not substantial. If no such weighty nonfrivolous claims are attached, the statutory presumption applies."). Such a conclusion is supported by the Court's own reasoning that even the "very aggressive" claims in the SAC came very close to violating Rule 11(b). 7/15/2016 Tr. 17:4; *accord Gurary*, 303 F.3d at 222 (weighing claims that "patently lacked merit and only narrowly avoided being deemed frivolous themselves"). It logically follows that "the complaint as a whole would properly be viewed as prima facie abusive." *Id.* at 222-23.

*Second*, had the Rosen Law Firm refrained from filing the original and amended complaints, or voluntarily dismissed the action after the Rule 11 letter, Defendants never would have had to defend against a SAC. *See In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*, 712 F.Supp2d at 266 (imposing sanctions under the PSLRA in part because defendants "would never have had to defend against a securities fraud lawsuit at all had the Original Complaint not been filed"). Indeed, this Court should not incentivize securities plaintiffs, and reward the Rosen Law Firm, for coming up with meritless, but not legally frivolous, claims in the SAC. This is particularly so where those claims would never have been the subject of a class action lawsuit filed in the first instance. *See* Dkt. 46 (Defs' Reply Br. in support of Motion to Dismiss), at 1-2.

*Third*, taken as a whole, the conduct of the Rosen Law Firm throughout this litigation, from start to finish, showed no serious effort to comply with Rule 11(b), and has all the hallmarks of abusive litigation, including dubious PSLRA certifications, a lack of reasonable due diligence to investigate, a refusal to withdraw a complaint even after being placed on notice of

the potential of Rule 11 violations, and the filing of a SAC in an apparent attempt to try to survive a motion to dismiss and seek to avoid sanctions for its earlier conduct.

*Fourth*, a finding of "abusive litigation" is consistent with the underlying purpose and goal of the PSLRA. As noted, contrary to the conduct of the Rosen Law Firm here, Congress's goal was to: (a) shift control of class actions away from law firms; (b) eliminate "professional plaintiffs," like the one solicited here with nominal holdings; (c) insist upon a thorough due diligence ***before*** a securities fraud complaint is filed, in part by eliminating any safe harbor; (d) deter circumstances that would allow coercive settlements  by empowering defendants to defend themselves through the presumption of reimbursement of attorneys' fees and costs; and (e) in the end, promote diligent conduct and deter irresponsible conduct. A finding of abusive litigation in this case would vindicate Congress's intent, its statutory scheme, and its purpose in enacting the PSLRA in the first place.

Because this lawsuit is abusive, it represents a substantial failure to comply with Rule 11, and the statutory presumption of all costs and attorneys' fees applies. While the Rosen Law Firm and its clients may try to rebut that presumption, Defendants note that, in addition to substantial legal fees, it has suffered reputational harm and catastrophic losses due to the Rosen Law Firm's initial announcement soliciting plaintiffs, and the then filing and pendency of this class action lawsuit. *Committee PSLRA Statement*, at 40 ("little in the way of justice can be achieved by attempting to compensate the prevailing party for lost time and such other measures of damages as injury to reputation; hence it has written into law the presumption that a prevailing party should not have the cost of attorney's fees added as insult to the underlying injury"). Defendants also note that even if the Rosen Law Firm and its clients meet their burden, while full sanctions may not be warranted, an award of partial sanctions would be expected by the PSLRA.

## II.     ALTERNATIVELY, THIS COURT SHOULD AWARD PARTIAL SANCTIONS FOR EACH INDEPENDENT FAILURE TO COMPLY WITH RULE 11(B)

Alternatively, if this Court does not conclude that the lawsuit is abusive and that a substantial violation took place (thereby creating the rebuttable presumption of all fees), this Court can and should award partial sanctions for each failure to comply with Rule 11(b). *Gurary*, 303 F.3d at 222 ("even if no substantial failure existed under the PSLRA, partial sanctions might still be assessable under ordinary Rule 11 standards to punish not the bringing of the whole suit, but only of the frivolous claim."). Many such failures have been discussed above, with the extent of any sanction award naturally depending on the nature and consequences of the failure.

### *Conclusion*

Unlike ordinary cases implicating Rule 11, Congress eliminated the "safe harbor" in cases brought under the PSLRA. It sought to eliminate lawyer-driven lawsuits like this one, initiated with bare-bones, speculative complaints, without strong prospect for success, relentlessly pursued on the expectation that a court will rarely, if ever, award sanctions for such conduct. This is inconsistent with Congress's purpose in enacting the PSLRA, and this Court should join other courts in this District in sending a strong message that such conduct will not be tolerated in securities cases, and that courts will enforce the PSLRA statutory provisions both as written and as Congress intended.


Dated:  August 15, 2016                                    Respectfully Submitted,

                                                           **ASHCROFT LAW FIRM, LLC**

                                                           /s/ Michael J. Sullivan
                                                           Michael J. Sullivan

                                                           *Counsel for Defendants*


- 25 -

## CERTIFICATE OF SERVICE

I, Michael J. Sullivan, hereby certify that on August 15, 2016, I electronically filed the foregoing document with the United States District Court for the Southern District of New York by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

THE ROSEN LAW FIRM, P.A.
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Jonathan Stern, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email:  jstern@rosenlegal.com

*Counsel for Plaintiffs*

/s/ Michael J. Sullivan
Michael J. Sullivan