**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Jonathan Stern, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jstern@rosenlegal.com

*Counsel for Lead Plaintiff and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GARY ZAGAMI, Individually and on Behalf of all Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>CELLCEUTIX CORPORATION, LEO EHRLICH, AND KRISHNA MENON,<br><br>      Defendants. | **Case No. 1:15-cv-7194 (KPF)**<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR FINDING OF "ABUSIVE LITIGATION" PURSUANT TO THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995** |

## TABLE OF CONTENTS

I.   Introduction ............................................................................................................. 1

II.  Argument .................................................................................................................. 1

   A.   Standard ................................................................................................................ 1

   B.   The Filing of the Initial and First Amended Complaints Is Not Sanctionable ................. 3

      1.   The Court Need Not Consider Complaints Superseded by the Second Amended Complaint ............................................................................................... 3

      2.   Plaintiffs Conducted a Reasonable Inquiry Before Filing the Initial Complaint ......... 5

      3.   The Allegations in the Initial and First Amended Complaints Were Based on Existing Law .................................................................................................. 9

   C.   The Filing of the Second Amended Complaint Was Not Sanctionable ........................ 12

      1.   The Allegations in the Second Amended Complaint Had Evidentiary Support, and Were Based on Reasonable Legal Arguments .......................................... 12

   D.   Defendants Identify No Substantial Violation .............................................................. 16

III. Conclusion ................................................................................................................ 17

## Cases

*Barr Labs., Inc. v. Abbott Labs.*,
  867 F.2d 743 (2d Cir. 1989)..................................................................................2

*Basic Inc. v. Levinson*,
  485 U.S. 224, 108 S. Ct. 978, 981, 99 L. Ed. 2d 194 (1988)..................................10

*Colliton v. Morgan*,
  No. 07 CIV. 8269 LTS THK, 2009 WL 874043 (S.D.N.Y. Mar. 31, 2009) ...........13

*Elfoulki v. Brannons Sandwich Shop*, LLC,
  No. 14-CV-5964 (PKC), 2016 WL 3542458 (S.D.N.Y. June 22, 2016)..................2

*Foremost Guar. Corp. v. Pub. Equities Corp.*,
  No. 86 CIV. 6421 (CSH), 1989 WL 120036 (S.D.N.Y. Oct. 5, 1989)....................2

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994)...............................................................................6, 7

*Gurary v. Winehouse*,
  235 F.3d 792 (2d Cir. 2000)..................................................................................4

*Ho v. Duoyuan Glob. Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012)...............................................................6, 11

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)..................................................................11

*In re Delcath Sys., Inc. Sec. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014).....................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
  399 F. Supp. 2d 369 (S.D.N.Y. 2005)................................................................3, 4

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  No. 13 CV 214 HB, 2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ...........................6

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 619 (S.D.N.Y. 2014).....................................................................7

*In re Symbol Techs., Inc. Sec. Litig.*,
  No. 05-CV-3923 DRH AKT, 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) ...........11

*In re Winstar Commc'ns*,
  No. 01 CV 3014, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) .............................11

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135, 131 S. Ct. 2296, 2297, 180 L. Ed. 2d 166 (2011).......................9, 10

*K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*,
  61 F.3d 123 (2d Cir. 1995)....................................................................................2

*Kiobel v. Millson*,
  592 F.3d 78 (2d Cir. 2010)..................................................................................12

*Lawrence v. Wilder Richman Sec. Corp.*,
  417 F. App'x 11 (2d Cir. 2010)..............................................................................2

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27, 131 S. Ct. 1309, 1318, 179 L. Ed. 2d 398 (2011)..............................9

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013)....................................................................6

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
  900 F.2d 576 (2d Cir. 1990)................................................................................14

*Overton v. Todman & Co., CPAs, P.C.*
  478 F.3d 479 (2d Cir. 2007)................................................................................ 13
*Rodick v. City of Schenectady,*
  1 F.3d 1341 (2d Cir.1993).................................................................................... 2
*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.,*
  186 F.3d 157 (2d Cir. 1999)................................................................................. 2
*Tenney v. Credit Suisse First Boston Corp.,*
  No. 05-3430-CV, 2006 WL 1423785 (2d Cir. May 19, 2006) ............................. 3, 4
*U.S. S.E.C. v. E. Delta Res. Corp.,*
  No. 10-CV-310 SJF WDW, 2012 WL 3903478  (E.D.N.Y. Aug. 31, 2012) ......................... 10

**Statutes**

Fed. R. Civ. P. 11 ................................................................................................... *passim*

**Other Authorities**

2 James Wm. Moore et al., *Moore's Federal Practice,* § 11.11 (3d ed.2008)............................. 13
Securities Litigation Reform, Joint Explanatory Statement of the Committee of Conference, H.R.
  CONF. REP. NO. 104-396 (1995) ............................................................................ 8

## I.      <u>Introduction</u>

In the pre-motion conference on July 15, 2016, the Court instructed Defendants that "my inclination is not to impose sanctions." Transcript of Hearing dated July 15, 2016 ("July 15 Transcript), 17. Defendants were therefore on notice that they had to present something *new* to the Court that had not been considered, in order to justify sanctions.  Instead, Defendants in their motion for sanctions simply repeat their own arguments from the motion to dismiss. This not only fails to offer anything new, it also ignores the standard for sanctions. To prevail, Defendants must show either (1) a clearly erroneous fact or (2) a position of law that is foreclosed by obviously binding authority. It is not enough to say that Plaintiffs lost, they must show that based on objective criteria, Plaintiffs' loss was a foregone conclusion. Defendants have not done so.

In addition, Defendants focus their attention on two earlier complaints that were superseded by the Second Amended Complaint (Dkt. No. 32). Under Second Circuit case law, however, the focus must be on the Second Amended Complaint. More, Defendants argue that it was somehow sanctionable for Plaintiffs to sign their PSLRA certifications on the same day that the short seller report was released which formed the basis of many of the allegations in the Initial Complaint (Dkt. No. 1), despite the fact that the Initial Complaint was not filed until over a month later. But Rule 11 is not concerned with the state of a draft complaint before it is submitted to Court. It is concerned with what is actually submitted to the court, and the complaints that were submitted to the Court were based on thorough research. For these reasons, sanctions are unwarranted.

## II.     <u>Argument</u>

### A.      <u>Standard</u>

"Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents

'a pleading, written motion, or other paper' to the court thereby 'certifies' that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is (1) not presented for any improper purpose, 'such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported in facts known or likely to be discovered on further investigation." *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 13 (2d Cir. 2010) *quoting* Fed. R. Civ. P. 11(b). Allegations of misconduct must meet a "high threshold" before sanctions are imposed. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998). "Sanctions should only be imposed if 'it is patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995), *quoting Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993). While the PSLRA makes the sanctions inquiry mandatory, it "does not in any way purport to alter the substantive standards for finding a violation of Rule 11." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999). The ultimate sanctions inquiry is whether the standard for certification was met at the time that the questioned paper was filed. "[A]busive conduct is determined as of the time of filing." *Barr Labs., Inc. v. Abbott Labs.*, 867 F.2d 743, 748 (2d Cir. 1989); *see also Elfoulki v. Brannons Sandwich Shop*, LLC, No. 14-CV-5964 (PKC), 2016 WL 3542458, at *4 (S.D.N.Y. June 22, 2016) ("If there was a good faith basis for the allegation at the time of filing but ultimately that allegation could not be proven, there would be no basis for sanctions."); *Foremost Guar. Corp. v. Pub. Equities Corp.*, No. 86 CIV. 6421 (CSH), 1989 WL 120036, at *1 (S.D.N.Y. Oct. 5, 1989) ("Rule 11 looks to the attorney's certification at the time of filing of the specified pleading.").

**B.** **The Filing of the Initial and First Amended Complaints Is Not Sanctionable**

**1.** **The Court Need Not Consider Complaints Superseded by the Second Amended Complaint**

Defendants argue that, notwithstanding the fact that they were superseded by the Second Amended Complaint, the Court should award sanctions based on deficiencies in the Initial Complaint and the First Amended Complaint (Dkt. No. 10). But Defendants were in no way prejudiced by any deficiencies that could be identified in the Initial or First Amended Complaints, because those complaints were superseded by the Second Amended Complaint before Defendants were required to draft a dispositive motion. Indeed, after Defendants provided a Rule 11 safe harbor notice to Plaintiffs, Plaintiffs informed Defendants of their intention to amend, thereby putting Defendants on notice that there was no need to move to dismiss the earlier complaints and avoiding any prejudice from having to respond to those complaints. Two Second Circuit cases support the view that it is the final, adjudicated complaint that should be the focus of the PSLRA sanctions inquiry.

In *Tenney v. Credit Suisse First Boston Corp.*, No. 05-3430-CV, 2006 WL 1423785 (2d Cir. May 19, 2006), the Court of Appeals affirmed an opinion by the Southern District of New York to deny PSLRA sanctions. The District Court denied sanctions despite the fact that the plaintiffs' counsel had proffered a class representative, Lloyd Hinn, who clearly lacked standing, and the court found that "Plaintiffs' inclusion of Hinn as a potential class representative was a clear and easily avoidable error." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 369, 373 (S.D.N.Y. 2005). Hinn appeared as a plaintiff in the second amended complaint. See Declaration of Laurence Rosen ("Rosen Dec.") Ex. 1, Docket for *Liu v. Credit Suisse First Boston Corp.*, 1:04 cv 03757 SAS, Docket No. 7. The third amended complaint proffered Sharon Brewer as a

class representative, and though the Court dismissed the allegations, sanctions were denied because the Court found that "Brewer's candidacy, rested on [a] nonfrivolous argument". *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d at 373. The Second Circuit affirmed, finding that "under a broad reading of the amended complaint, there was a plaintiff with standing." *Tenney*, 2006 WL 1423785, at *1. The Second Circuit therefore affirmed on the basis of the nonfrivolous allegations in the third amended complaint, notwithstanding an obvious deficiency in the second amended complaint.

In *Gurary v. Winehouse*, the Second Circuit held that sanctions are not warranted with respect to claims where an amendment could lead to a cognizable claim. 235 F.3d 792, 801 (2d Cir. 2000). In *Gurary*, plaintiff brought a securities fraud claim based on four purchases. *Id.* at 796. With respect to the first two of those, the Court found that the plaintiff clearly lacked standing and stated that sanctions were merited. *Id.* at 800. However, with respect to the second two claims, there was standing, but the plaintiff had apparently failed to present a nonfrivolous argument for scienter at any point until the opposition to the then-instant appeal. *Id.* at 801. Although the Court of Appeals held that the District Court did not abuse its discretion in denying leave to appeal, the Court of Appeals noted that, had leave to appeal been granted, the plaintiff might have been able to plead a cognizable scienter theory. The Court concluded that the plaintiff's "failure to sufficiently plead the necessary elements of a cognizable 10b–5 claim does not warrant sanctions under the PSLRA in this instance because the district court could have, within its broad discretion, afforded [plaintiff] leave to amend his complaint, which would have resulted in a cognizable 10b–5 claim." *Id.* at 802. The procedural posture here differs from *Gurary*, but the logic of *Gurary* necessitates that the Court only focus on the final, adjudicated complaint, not an earlier, superseded complaint. Had the *Gurary* court followed the rule

4

advocated by Defendants, of considering superseded complaints for sanctions, then its ruling would not be logical: if each superseded complaint must independently be considered for sanctions, than the ability of a subsequent complaint to survive a motion to dismiss is not relevant – sanctions would still be warranted for the earlier complaint.  But because the ability to replead, under *Gurary*, cures the potentially sanctionable conduct, it follows that allegations in a superseded complaint should not be considered. Therefore, the Court should consider only the Second Amended Complaint. However, as set forth in the following sections, even if the Initial and First Amended Complaints are considered, sanctions are unwarranted.

> **2.      Plaintiffs Conducted a Reasonable Inquiry Before Filing the Initial Complaint**

Defendants argue that Plaintiffs conducted no reasonable inquiry because (1) it was improper to rely on information in the Pump Stopper Report and (2) it was improper for Plaintiffs to sign PSLRA certifications on the same day that the Pump Stopper issued its report. Memorandum of Law in Support of Motion for Sanctions ("Defendants' Brief"), p. 14. Neither of these arguments have merit. With respect to the first issue, Defendants identify virtually no example of courts rejecting a complaint for relying on short seller allegations. With respect to the second issue, Defendants provide no authority or reason for finding that *when* clients signed their PSLRA certifications has any relevance to the sanctions inquiry.

It was proper for Plaintiffs to rely on information in the Pump Stopper Report because numerous decisions in the Southern District of New York have endorsed such reliance. At the motion to dismiss stage, "the Court must accept the factual allegations contained in the Citron Report and the Muddy Waters Report as sufficiently reliable as a factual source for Plaintiffs' allegations." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 124

(S.D.N.Y. 2013). Another court noted that "courts in this district frequently accept allegations based on short-seller reports at this stage in a case." *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 CV 214 HB, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014); *see also Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012). Given that decisions in this district are consistent in their holding that reliance on short seller reports for pleadings purposes is proper, it was entirely reasonable for Plaintiffs to rely on such a report, and it is frivolous to claim that such conduct is sanctionable. Defendants' argument is particularly meritless where, as here, Defendants have not identified any factual inaccuracies in the Pump Stopper Report.

In addition, Plaintiffs verified the information in the Pump Stopper Report by reviewing the information relied upon by the Pump Stopper Report and cited therein. The Pump Stopper Report was very well researched and thoroughly sourced citing to well respected medical journals. The citations in the Pump Stopper Report were to publicly available documents that were retrievable on the internet. Plaintiffs were therefore easily able to verify the source documents cited by the Pump Stopper Report. Rosen Dec. ¶2. For this reason, *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280 (3d Cir. 1994) is totally inapposite. In *Garr*, a securities fraud case initiated prior to the passage of the PSLRA, two plaintiffs filed copycat complaints for the purpose of helping the first filing attorney, James Malone, be selected as lead attorney. *Id* at 1277. Malone had conducted an investigation into the underlying facts, relying in part on a *Wall Street Journal* article, as well as other sources of information, such as SEC filings. *Id.* at 1275. The other two attorneys, meanwhile, "relied only on the Wall Street Journal article, the [first filed] complaint, and Malone. They made no effort to examine the numerous materials Malone assembled, and they cannot justify their failure to have done so." *Id.* at 1280. Notably it was not

6

reliance on the *Wall Street Journal* article that the Court took issue with, but reliance on another complaint. It is also important to note that *Garr* is a Third Circuit case, and there is some dispute in the Second Circuit as to whether reliance on another complaint is unreasonable. *see In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 620 (S.D.N.Y. 2014) ("[S]ome district courts in this Circuit have adopted the broad rule that a complaint may never reference allegations from a separate proceeding that has not been decided on the merits. However, no Second Circuit precedent indicates such a broad rule."). There is no question, however, that a complaint may rely on allegations in a press article or short seller report, and thus it was more appropriate to rely on allegations in a short seller report than allegations in another complaint. The most crucial distinction, however, between the copycat complaints in *Garr* and the Complaints here is that the Rosen Law Firm reviewed the underlying supporting documentation in the Pump Stopper Report, and therefore cannot be accused of outsourcing their responsibility for verifying the factual veracity of the Complaints to another complaint.

Defendants also criticize Plaintiffs for signing their PSLRA client certifications on the same day that the Pump Stopper Report was published, Defendants' Brief, p. 15, but Defendants draw no connection between the issue of when the parties signed their PSLRA certification and whether Plaintiffs' counsel, at the time of filing the complaint more than one month later, had a valid basis for issuing the certification required by Section 11 of the Federal Rules of Civil Procedure. Plaintiffs' counsel received a PSLRA certification from Nicole O'Connell prior to the completion of final draft of the Initial Complaint. Rosen Dec. ¶3. The final Initial Complaint was provided to Ms. O'Connell prior to filing. *Id.* The First Amended Complaint was filed to remove her as a plaintiff in the case at the request of Ms. O'Connell. *Id.* Mr. Zagami replaced Ms. O'Connell as a plaintiff in the First Amended Complaint—which was provided to Mr. Zagami

prior to filing. *Id.* Mr. Zagami was also provided a copy of the final Initial Complaint prior to the filing of the First Amended Complaint. *Id.* Indeed, not only is there no authority, there is no logic behind Defendants' fixation on when the PSLRA certifications have been signed. Rule 11 is triggered by the attorney's signing of a complaint and the filing of that complaint with the court. By its terms, Rule 11 is triggered "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b). But a paper that is signed and not filed is not presented to the court.  In passing the PSLRA, Congress was concerned about the *filing* of frivolous litigation. Congress was concerned with "the routine *filing* of lawsuits against issuers of securities." Securities Litigation Reform, Joint Explanatory Statement of the Committee of Conference, H.R. CONF. REP. NO. 104-396, at 31 (1995) ("Committee PSLRA Statement") (emphasis added). Defendants themselves noted that Congress's intent was "to impose upon courts the affirmative duty to scrutinize filings closely and to sanction attorneys or parties whenever their conduct violates Rule 11(b)." Committee PSLRA Statement, at 40. There is simply no reason for a court to be concerned with the quality of draft complaints that were not filed. Indeed, Defendants' suggestion that the Court should order Plaintiffs to submit work product and attorney client communications to the Court not only violates the PSLRA's text, which disclaims any intent to effectuate a waiver of attorney client privilege by the signing of a PSLRA certification. "The certification filed pursuant to subparagraph (A) [the PSLRA certification] shall not be construed to be a waiver of the attorney-client privilege." 15 U.S.C. § 78u–4 (a)(1)(B). Ordering of *in camera* submission would lead to routine court scrutiny of the attorney client relationship and burden the court with a review of voluminous attorney client communications. It would also interfere with the attorney client relationship because it would encourage attorneys to structure their communications in such a

8

way to "make a record".

### 3.   The Allegations in the Initial and First Amended Complaints Were Based on Existing Law

Defendants overstate Second Circuit case law when they suggest that allegations of fraud with respect to scientific opinion are per se inactionable. Defendants' Brief, p. 18. Instead, it stands for the proposition that a *reasonable* opinion is not an actionable misstatement. *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 154 (2d Cir. 2013). Defendants suggest that *Kleinman* renders discussions of medical matters to be virtually immune from Section 10 liability, but there is no statutory or legislative basis for granting defendants an essential license to lie about pharmaceutical products. Indeed, the case law goes in the other direction. The Supreme Court has held that failure to disclose adverse events associated with a pharmaceutical product is a material omission, even in the absence of statistical significance. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39, 131 S. Ct. 1309, 1318, 179 L. Ed. 2d 398 (2011). Judge Schofield, in an opinion comparing *Kleinman* to *Matrixx*, notes that the difference between the two lies is that in *Matrixx,* the issue was defendants' failure to disclose data, rather than their interpretation of data. *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 333 (S.D.N.Y. 2014). The distinction between the two cases can be tricky to apply in practice. Therefore Plaintiffs could have proceeded in two ways: (1) by arguing that Defendants unreasonably interpreted their own data; or (2) that they failed to disclose information that materially undercut their statements. These arguments would have been supported by citations to the articles identified in and relied upon by the Pump Stopper Report. That the District Court might have ultimately rejected these arguments is not the issue. The issue is that these are colorable arguments.

Defendants similarly oversimplify *Janus* in their analysis of the statements in the *Future*

*Woman* article. *Janus* involved a very different factual context than the one here. *See* Defendants' Brief, p. 18.  In *Janus*, the false statements were made in a mutual fund registration statement, which was filed by the Janus Investment Fund, a mutual fund, and the question was whether Janus Capital Management, its investment advisor, could be held liable, despite not having signed the registration statement. *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296, 2297, 180 L. Ed. 2d 166 (2011). The Supreme Court held that they could not. But the court did not rule out the possibility that a defendant might be held liable for a statement published by a third party. *Id.* 147, n. 11. Thus, the court left open the possibility that a defendant could be held liable for a statement quoted or "otherwise repeat[ed]" by a third party, so long as that statement is "explicitly or implicitly" attributed to the third party. *Id. Janus* also noted that *Basic v. Levinson* itself involved a false statement by a company president that was quoted by a third party. *Id.*, *citing Basic Inc. v. Levinson*, 485 U.S. 224, 228, 108 S. Ct. 978, 981, 99 L. Ed. 2d 194 (1988). Here, the situation is somewhat different. The *Future Woman* article contained quotes by Menon, but the false statement about Menon was not a direct quote. Plaintiffs believed that the Court should conclude that Plaintiffs plausibly alleged that an article profiling a person and containing direct quotes from a person can attribute other personal information about that person to that person for *Janus* purposes.  Ultimately the Court disagreed, but Defendants cite no binding authority that could settle the issue.

Defendants also attack the scienter allegations in the Second Amended Complaint. Defendants' Brief, p. 19. The Second Amended Complaint alleges numerous bases for Menon's scienter. First, Menon has indisputably lied about receiving a PhD at Harvard. ¶53. Further, the Second Amended Complaint notes that Menon has a history of lying to investors. This is relevant because a pattern of deceptive behavior "demonstrates a high degree of scienter." *U.S. S.E.C. v.*

*E. Delta Res. Corp.*, No. 10-CV-310 SJF WDW, 2012 WL 3903478, at *8 (E.D.N.Y. Aug. 31, 2012); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 DRH AKT, 2013 WL 6330665, at *10 (E.D.N.Y. Dec. 5, 2013) ("prior misconduct establishes a pattern of culpable conduct on the part of Symbol and its management which supports a strong inference of scienter."). In addition, the fraud related to a core operation of the Company.

> High level corporate officers who signed SEC filings containing the company's financial statement have a duty to familiarize themselves with the facts relevant to the core operations of the company and the financial reporting of those operations. Such officers may not ignore reasonably available data that would indicate that the statements they issued regarding the company's finances were materially false or misleading.

*In re Winstar Commc'ns*, No. 01 CV 3014, 2006 WL 473885 at *7 (S.D.N.Y. Feb. 27, 2006) (citation omitted); *Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d at 574  ("Knowledge of the falsity of a company's financial statements can be imputed to key officers who should have known of facts relating to the core operations of their company that would have led them to the realization that the company's financial statements were false when issued.") (quoting *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 490 (S.D.N.Y. 2004)); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 447 (S.D.N.Y. 2000) (in addition to several years of significantly false financial figures, access to company's "actual sales and revenue information by virtue of their positions .. combine to raise a strong inference that [the company's CEO and CFO] engaged in conduct that was either conscious or reckless"). Cellceutix was a development stage biotech company and the fraud was directed at the efficacy of the products they were developing. The Court need not determine whether these allegations of scienter were sufficient to survive a motion to dismiss.  It is sufficient for the purposes of this motion that they were colorable.

C.      **The Filing of the Second Amended Complaint Was Not Sanctionable**

Defendants' argument that Plaintiffs should be sanctioned based on the Second Amended Complaint consists largely of a chart outlining the allegations in the Second Amended Complaint and the reasons that the Court dismissed those arguments. Defendants' Brief pp. 20-22. However, as Defendants should know, merely because a complaint's allegations were not sustained does not mean that they were sanctionable. *See Kiobel v. Millson*, 592 F.3d 78, 82 (2d Cir. 2010) (only claims utterly lacking in merit are sanctionable). Moreover, given that in this case the court instructed Defendants that it was disinclined to issue sanctions, Defendants should have presented some new argument or analysis to the Court. Parroting back the Court's own reasons for dismissing the claims hardly qualifies.

1.      **The Allegations in the Second Amended Complaint Had Evidentiary Support, and Were Based on Reasonable Legal Arguments**

Defendants point to the Second Amended Complaint's allegation that "[o]n May 10, 2013, *Future Woman* published a profile article on Defendant Menon, which he was interviewed for." Complaint ¶22. Defendants claim that this allegation lacked evidentiary support because the article did not state that Menon was interviewed for the article.  But the article contains direct quotes from Menon. Using quotes in a journalistic publication from sources other than an interview without attributing those sources is considered plagiarism. *See* Lisa O'Carroll, *Johann Hari apologises over plagiarism and hands back Orwell prize*, The Guardian, September 14, 2011 (noting that award winning journalist was required to give back an award, take a leave of absence, and undergo journalism training for, in part, using quotes that were not the results of interviews without attribution to the original article), attached as Exhibit 2 to the Rosen Declaration. This is because, if a quote appears in an article without an attribution to another

12

source, the assumption is that the quote is a result of a direct interview. Given that in the journalistic profession, quotes not attributed to a secondary source are considered to be the results of direct interviews, the assumption that Menon was interviewed for the *Future Woman* article, therefore, was eminently reasonable.

Defendants complain that Plaintiffs falsely claimed that Ehrlich did not correct the pre-class-period misstatement that Menon did not attend Harvard. Defendants' Brief. p. 20. But there is no factual dispute. Defendants acknowledge that the 2009 10-K falsely claimed that Menon attended Harvard. July 15 Transcript, p. 4. Defendants had a duty to correct their false statement. *Overton v. Todman & Co., CPAs, P.C.*, 478 F.3d 479, 487 (2d Cir. 2007). The only question is then a legal one – whether Defendants, by stating that Menon obtained a PhD at Kerala University, sufficiently correct the pre-class-period misstatement, or were they required to affirmatively state that he did not obtain a PhD from Harvard. *See* July 15 Transcript p. 4 (noting that the dispute on this issue is a legal one – whether the efforts to correct the prior misstatement were sufficient). It is entirely possible for researchers to obtain PhD degrees from two different universities. Stating that Menon obtained a PhD degree from Kerala University does not mean that Menon did not also attend Harvard. Plaintiffs argued that Defendants did not sufficiently correct the misstatement, arguing that it was necessary to issue an affirmative statement that Menon did not receive a PhD from Harvard. The Court disagreed. But the mere fact that the Court rejected Plaintiffs' legal argument is insufficient to render the Complaints legally frivolous. "Sanctions under Rule 11 are inappropriate when there are different interpretations of the law or when contrary controlling authority is not obvious." 2 James Wm. Moore et al., *Moore's Federal Practice,* § 11.11 (3d ed.2008); *quoted in Colliton v. Morgan*, No. 07 CIV. 8269 LTS THK, 2009 WL 874043, at *1 (S.D.N.Y. Mar. 31, 2009). Because Defendants have

13

failed to show any *obvious* controlling authority that would foreclose Plaintiffs' argument, they have not demonstrated the appropriateness of sanctions.

Defendants also claim that it was unreasonable to interpret "Gram negative coverage" as suggesting that Brilacidin could treat Gram negative bacteria. Defendants characterize this as "not a fair reading" of Defendants' statement. Defendants' Brief p. 21. The Court did indeed find that the use of "Gram negative coverage" was not misleading, and disagreed with Plaintiffs' interpretation of the poster, but to reach that conclusion, the Court performed a highly detailed analysis of Defendants' statement and the meaning of coverage. Moreover, the Court noted that, under other circumstances, even if not literally false, it is possible that the manner in which the presentation of the poster and its context could mislead investors, citing *McMahan & Co.* v. *Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990). Motion to Dismiss Order at 24. However, because the statement at issue appeared in a poster presented to a scientific audience, rather than the general public, the Court did not apply *McMahon*. But this only describes why the Complaint was dismissed. More is needed to warrant sanctions, and Defendants present no analysis as to why they are warranted here. Defendants identified no misstatement of fact, and the Court did not reject the claim for misstating any fact, but rather for drawing an inference from undisputed facts that the Court did not find warranted. Nor did Defendants identify any clearly controlling legal authority that would have made it obvious to Plaintiff that the inference *was* unwarranted.

Defendants note Plaintiffs' allegation that Defendants misled investors by failing to disclose that Brillacidin's alleged antibiotic properties could not be effective in treating oral mucositis was not found to be material by the Court. Defendants' Brief p. 22. This repeats the same problem discussed above. While Defendants identify why the Court dismissed the

allegation, they do not identify any mistake in fact, or any clearly controlling contrary authority that could justify the issuance of sanctions.

Defendants claim that Plaintiffs had no chance of success as to the allegation that P21 is not a biomarker. Defendants' Brief p. 21.  Defendants rely for this argument on *Kleinman*.  *Id.* But Plaintiffs' argument in the motion to dismiss was that this case is not covered by *Kleinman*, MTD Opp. pp. 20-21. Defendants provide no basis for concluding that this argument was frivolous.

Defendants also point out that the Court ruled against Plaintiffs' argument that Defendants materially omitted the fact that a patient who ceased treatment with Kevetrin did so due to an elevated CA125 count. Defendants' Brief p. 22. Defendants note that they in fact disclosed the fact that the patient had a CA125 count. *Id.* But Plaintiffs' allegation was not that Defendants did not disclose the elevated CA125 count, but rather that Defendants failed to disclose the connection between the elevation of the CA125 count and the cessation of treatment. Second Amended Complaint, ¶36. This again comes down not to a question of what the facts are, but a legal question – did Defendants have an obligation to identify explicitly the connection between the elevated CA125 count and the termination of treatment. Plaintiffs believed that Defendants did. The Court disagreed, but Defendants again cite no controlling authority that would have made it obvious to Plaintiffs that the Court would rule as it did.  Defendants also argue that this is inactionable medical opinion under *Kleinman*.  *Kleinman*, 706 F.3d at 154, *cited in* Defendants Brief p. 22. But it is hard to see how *Kleinman* is applicable here because Plaintiffs did not challenge Defendants' medical opinion, but rather their failure to disclose specific adverse facts.

Finally, Defendants challenge Plaintiffs' allegations regarding Defendants' risk

disclosures. Defendants' Brief p. 22. Defendants claim that this allegation is false because "Defendants fully disclosed risks of raising capital and lack of clinical trial experience in 'Risks' section of Forms 10-K in 2013, 2014, and 2015." *Id.* But this is not a factual dispute, but a legal one. Plaintiffs' contention was that the acquisition of the rights to Brilacidin increased Defendants' financing risks and therefore warranted a more fulsome disclosure than was given, and that Defendants' total lack of experience with Phase 3 trials should have been disclosed, rather than just Defendants' limited experience with clinical trials in general.  MTD Opp. at 23. Of course, the Court disagreed, but Defendants again provide no obvious controlling authority that would have rendered the Court's decision a foregone decision, and thus have not established that Plaintiffs' conduct was sanctionable.

> ### D.     Defendants Identify No Substantial Violation

The Court need not consider whether there was a substantial violation of Rule 11, because there was no violation of Rule 11 at all. But even if the Court did find a technical violation of Rule 11, there is no justification for finding a "substantial violation" that would warrant awarding Defendants the full amount of their attorneys' fees.  When only some claims in a complaint are frivolous, "the district court must examine the qualitative substance of the nonfrivolous claims in order to assess whether these claims were, in fact, legitimate filings that had the potential of prevailing or whether they patently lacked merit and only narrowly avoided being deemed frivolous themselves." *Gurary*, 303 F.3d at 222. At the pre-motion conference, the Court noted that there was "a lot of thought" put into the opinion dismissing the case, and that this "may suggest that there was at least some traction to the claims being made." July 17 Transcript pp. 17-18. The Court noted that Plaintiffs were attempting a legitimate strategy, to find exceptions to potential negative authority such as *Kleinman, Id.* 17. Defendants have

presented nothing to undermine the Court's conclusions. Therefore, even if there was a violation, it was not substantial. And these same complex issues regarding interpretation of *Kleinman* would have been at play with respect to the Initial and First Amended Complaints. Therefore, even if the Court did find sanctions, no "substantial" violation exists, warranting the full award of attorneys' fees.

## III.   Conclusion

    For the foregoing reasons, sanctions against Plaintiffs are not warranted.

Dated: September 23, 2016                        Respectfully submitted,

                                                  **THE ROSEN LAW FIRM, P.A.**

                                                  /s/ Laurence M. Rosen
                                                  Phillip Kim, Esq.
                                                  Laurence M. Rosen, Esq.
                                                    Jonathan Stern, Esq.
                                                  275 Madison Avenue, 34th Floor
                                                  New York, NY 10016
                                                  Phone: (212) 686-1060
                                                  Fax: (212) 202-3827

                                                  *Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 23rd day of September, 2016, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen