**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                      )

GARY ZAGAMI, Individually and on Behalf  )
of all Others Similarly Situated,              )
                                                   )
                                                   )  **Case No. 1:15-cv-7194 (KPF)**
Plaintiff,                               )
                                                   )
                                                   )
v.                                                  )  **ORAL ARGUMENT REQUESTED**
                                                   )
                                                   )
CELLCEUTIX CORPORATION, LEO       )
EHRLICH, AND KRISHNA MENON,        )
                                                   )
Defendants.                            )
_____ )


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
REQUEST FOR FINDING OF "ABUSIVE LITIGATION" PURSUANT TO
<u>THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995</u>**


                                                **The Ashcroft Law Firm, LLC**
                                                   Michael J. Sullivan, Esq.
                                                 200 State Street, 7th Floor
                                                        Boston, MA 02109
                                                     Tel: (617) 573-9400
                                                    Fax: (617) 933-7607
                                         [MSullivan@Ashcroftlawfirm.com](mailto:MSullivan@Ashcroftlawfirm.com)

                                                        *Counsel for Defendants*

## **TABLE OF CONTENTS**

Reply ..................................................................................................................................................1

    1.    The PSLRA requires this Court to make specific findings regarding
the initial complaints................................................................................................................1

    2.    It was not objectively reasonable to rely on an internet posting by a first time,
anonymous author as the basis for filing a securities class action lawsuit ...........................3

    3.    The Rosen Law Firm has not demonstrated that it conducted any inquiry,
let alone a reasonable inquiry, before filing the initial complaints......................................5

    4.    Plaintiff mischaracterizes the three arguments in the initial complaints .............................6

    5.    Plaintiff and the Rosen Law Firm ignore the PSLRA and the harm to
the Defendants, its shareholders, and the public at large......................................................8

Conclusion .......................................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337-38 (2d Cir. 2011) ............................... 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143 (2d Cir. 2009) ....................................... 3

*In re Keryx Biopharmaceuticals, Inc., Sec. Litig.,* No. 13 Civ. 1307 (KBF),
    2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) ............................................................................. 7

*Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 661 (4th Cir. 2004) ........................................ 7

*Gurary v. Nu–Tech Bio–Med, Inc*., 303 F.3d 212 (2d Cir. 2002) ............................................. 2, 9

*Gurary v. Winehouse*, 235 F.3d 792 (2d Cir. 2000) ....................................................................... 3

*In re Austl. & N.Z. Banking Group Ltd. Secs. Litig*.,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) ....................................................................................... 2

*In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 369 (S.D.N.Y. 2005) ................................ 3

*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ........................... 7

*Kleinman v. Elan Corp., plc*, 706 F.3d 145 (2d Cir. 2013) ............................................................ 7

*Nanoviricides v. Seeking Alpha, Inc.,* 2014 WL 2930753 (N.Y. Sup. Jun. 26, 2014) .................... 5

**Statutes**

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. §§78u-4(a)-(c), 78u-5 ..................................................................................... *passim*

**Other Authorities**

Securities Litigation Reform, *Joint Explanatory Statement of the
    Committee of Conference*, H.R. CONF. REP. NO. 104-396 (1995) ............................................ 2

**Rules**

Fed.R.Civ.P. 11(b) ................................................................................................... *passim*

*Reply*

Plaintiff's arguments to avoid sanctions in this case are based either on incorrect statements of the law, or misrepresentations of the facts. Far from showing why this Court should not award sanctions under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiff's Opposition ("Opp.") (Dkt. 67) shows why sanctions are entirely warranted here. Defendants wish to make five points in reply and in support of its request for full sanctions, that is, an award of its reasonable attorneys' fees and expenses incurred in this action.

### 1. The PSLRA requires this Court to make specific findings regarding the initial complaints

Plaintiff's theory that the filing of an amended complaint supersedes all earlier complaints and precludes the award of sanctions under the PSLRA is contrary to the text of the sanctions provision, the very purpose of the PSLRA, and existing law in the Second Circuit. In fact, this Court has acknowledged that it must make specific findings regarding the initial and first amended complaints, not simply the last complaint. To hold otherwise would not only violate the statute's plain language, but also would create an unending "safe harbor" where none exists, providing PSLRA plaintiffs with absolute immunity for filing initial complaints no matter how frivolous the claims may be, or how unreasonable the inquiry might have been.

The PSLRA sanctions provision makes clear that its mandatory review applies not only to the last complaint filed in the matter, but all of them:

> (c) **Sanctions for abusive litigation**
> (1) **Mandatory review by court**
> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure ***as to any complaint***, responsive pleading, or dispositive motion.

15 U.S.C. §78u-4(c)(1) (emphasis added); *see also* 15 U.S.C. §78u-4(c)(3)(A) ("the court shall adopt a presumption that the appropriate sanction … for substantial failure of **any complaint** to comply with any requirement of Rule 11(b) … is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action") (emphasis added).

Any interpretation seeking to limit this Court's review to "the final, adjudicated complaint" as Plaintiff argues, Opp. at 3, would render the word "any" meaningless, and fundamentally change the reach of the statute altogether. *Gurary v. Nu–Tech Bio–Med, Inc.*, 303 F.3d 212, 226 (2d Cir. 2002) ("*Gurary III*"). ("Because a statute's text embodies the duly enacted law and the final and authoritative expression of the legislative will, our principles of statutory construction emphasize the primacy of the statutory text.") (Walker, C.J., concurring).

Not surprisingly, Plaintiff's theory has been explicitly rejected by courts in this district. For example, in *In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 266 (S.D.N.Y. 2010), U.S. District Judge Denise Cote found that there is "no authority for the proposition that the filing of an amended complaint overwrites a Rule 11 violation contained in an original pleading and thereby prevents the imposition of sanctions under the PSLRA." In fact, when awarding sanctions, rather than finding the initial complaint meaningless by the filing of a later complaint, Judge Cote found it significant that defendants "would never have had to defend against a securities fraud lawsuit at all had the Original Complaint not been filed." *Id*. at 266.

Plaintiff's theory likewise undermines Congress's intent in enacting the PSLRA in two ways. First, it would ignore Congress's explicit intent, which even Plaintiff acknowledges, *see* Opp. at 8, "to impose upon courts the affirmative duty to scrutinize filings closely and to sanction attorneys or parties **whenever** their conduct violates Rule 11(b)." *Gurary III*, 303 F.3d at 223 (quoting the *Committee PSLRA Statement*) (emphasis added).

Second, it would create unending sanction immunity – essentially, a new "safe harbor" – for a PSLRA plaintiff who comes close enough to a non-frivolous argument at any point in the litigation. This result is squarely foreclosed by Second Circuit precedent and Congress's unambiguous elimination of Rule 11's "safe harbor" for cases brought under the PSLRA. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 579 F.3d 146-47 (2d Cir. 2009) (no PSLRA safe harbor because "the statute itself puts litigants on notice"). It also would incentivize securities plaintiff law firms to race to the courthouse, file a frivolous complaint, see if time would allow for the development of meritless, but not legally frivolous, claims, to be added to an amended complaint, rather than not filing in the first place, or voluntarily dismissing the lawsuit.[1]

## 2. It is not objectively reasonable to rely on an internet posting by a first time, anonymous author as the basis for filing a securities class action lawsuit

Plaintiff's claim that numerous decisions in this district show that "it was proper for Plaintiffs to rely on information in the Pump Stopper Report" is misleading at best.[2] In support of

---

[1] The two Second Circuit cases that Plaintiff relies upon in opposition are inapt; indeed, one must engage in legal inferences and logical acrobatics to find any suggestion of support for his position in them. Opp. at 3-5.

First, in *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 369 (S.D.N.Y. 2005), two issuers sought sanctions from the district court because two proposed class representatives (Lloyd Hinn, followed by Sharon Brewer) lacked standing. The district court declined to impose sanctions based upon Hinn's candidacy because (a) plaintiff's counsel admitted the error and voluntarily withdrew him, (b) Brewer had purchased securities during the proposed class period and "was also a putative class representative," and (c) the error did not affect the claims against the issuers. *Id*. at 373. The district court declined to impose sanctions based upon Brewer's candidacy because it was based upon a nonfrivolous argument set forth in the parties' correspondence that sought an extension of existing law. *Id*. The lone sentence Plaintiff quotes, Opp. at 4, from the appellate summary order – "under a broad reading of the amended complaint, there was a plaintiff with standing to sue each of these defendants" – undoubtedly had to do with district court's ruling regarding Brewer's candidacy, given that it was plainly not an abusive of discretion to deny sanctions as to Hinn's candidacy in light of several proffered reasons. In any event, the case in no way stands for the proposition that a final amended complaint supersedes all others.

Second, Plaintiff's reliance on *Gurary v. Winehouse*, 235 F.3d 792 (2d Cir. 2000) ("*Gurary II*") requires little comment. In *Gurary II*, the Court (unremarkably) ruled that sanctions were not appropriate for plaintiff's failure to meet the heightened PSLRA pleading requirements where the district court itself denied leave to amend – a step that would have allowed plaintiff to state a cognizable claim. In any event, although Plaintiff here likewise included ***no*** allegations regarding scienter in the initial and amended complaints, this pleading deficiency is not the basis for Defendants' request for full sanctions, and again, the case in no way holds that this Court is precluded from considering the initial and first amended complaints.

[2] The pseudonym used by the anonymous short seller in this case is "Mako Research," not "the Pump Stopper." Defendants do not know why Plaintiff would attribute the posting at issue to a different anonymous short seller

this representation, Plaintiff necessarily implies that the author of the posting here – Mako Research, a first-time, anonymous author – is qualitatively like the authors in the other cases – for example, Citron Research, Muddy Waters Research, and GeoInvesting, all well-known, long-standing investment research firms, which fully disclose their identities.

For instance, Citron Research's website ("Who is Citron Research") discloses:

> Citron Research has been publishing columns for over 14 years, making it one of the longest-running online stock commentary websites. With over 150 reports, Citron has amassed a track record identifying fraud and terminal business models second to none among any published source.
>
> * * *
>
> Citron Research represents the work of a team of investigators, led by Andrew Left. Mr. Left is a private investor with 17 years trading experience. Mr. Left has been quoted in every major US financial publication, including Forbes, Fortune, Wall Street Journal, Barron's, CNBC, Investors' Business Daily, and Business Week, as well as numerous Chinese media.
>
> **Regulatory interventions**
>
> Since 2001, more than 50 companies covered by Left have become targets of regulatory interventions. [chart of company and regulatory intervention follows.]

*See* < http://www.citronresearch.com/who-is-citron-research/ >.

Likewise, Carson Block, the founder of Muddy Waters Research LLC, appears regularly on CNBC, Bloomberg, and Fox Business News, and discloses information about the firm and its reports on its website. *See* < http://www.muddywatersresearch.com/about/ >. Geoinvesting also discloses the name of its founders on its website, as well as a list of its "Success Stories," which creates at least some indicia of reliability that could be assessed. *See* < http://geoinvesting.com/real-profit-stock-gains/ > ("Meet Our Founders"); < http://geoinvesting.com/join-geos-success/ > ("Geo's Success").

---

unless the Rosen Law Firm (a) knows that Mako Research and the Pump Stopper are one and the same, (b) has briefed this sanctions issue before and "cut and pasted" the text from another pleading (as it did with respect to the initial and amended complaints here), or (c) was simply careless in its treatment of the facts. In any event, Defendants will substitute the correct author when it quotes to Plaintiff's Opposition.

In stark contrast, Mako Research was (and still is) ***anonymous***. Mako Research's ***first story*** was its August 6, 2015, posting about Defendants. Mako Research, a self-described short seller, was thus a complete unknown, without any track record of credibility. Moreover, as explained below, numerous red flags by independent sources immediately questioned the truth and motivations of the posting sufficient to make it *per se* unreasonable for an objective lawyer to rely upon it. Under these circumstances, as a matter of law, the posting is not a sufficiently reliable source upon which to file a securities class action lawsuit. *Accord Nanoviricides v. Seeking Alpha, Inc.,* 2014 WL 2930753, at *6 (N.Y. Sup. Jun. 26, 2014) (readers should treat anonymous third-party content on *Seeking Alpha* "as opinion rather than fact").

### 3. The Rosen Law Firm has not demonstrated that it conducted any inquiry, let alone a reasonable inquiry, before filing the initial complaints

At the very minimum, the Mako Research posting should have been viewed by an objectively reasonable lawyer with extreme skepticism, thereby heightening the due diligence obligations required by Rule 11. In response, the Rosen Law Firm argues that it conducted a thorough month-long inquiry, and that "Defendants have not identified any factual inaccuracies in the [Mako Research] Report." Opp. at 6. Each of these representations is demonstrably false.

First, as this Court is aware, the day after the online posting by Mako Research, entitled "*Cellceutix: Empty Office, Unviable 'Science', Misleading Disclosures, 96% Downside*," *see* Dkt. 39-1, the Company issued a press release that flatly refuted the outrageously false and self-serving assertions in the posting, point-by-point. *See* Ex 1 ("August 7 Release) (Dkt. 39-2).[3]

Second, shortly after the posting, a *Boston Business Journal* article entitled "*My visit to Cellceutix, the biotech that a short seller recently called a sham*," unequivocally debunked (complete with photographs) the leading premise of the online posting – featured in its title ***and***

---

[3] Plaintiff made no mention of the August 7 Release in the initial complaints, or in the opposition to sanctions here. Plaintiff's first acknowledgment came in the SAC to try to support new, cobbled-together misrepresentation claims.

*in the first sentence of the posting* – that "Cellceutix is run out of what appears to be an empty office building … and … is nothing more than a shell corporation." *See* Ex. 2.[4]

That article also discusses a letter (authenticated by the article's author) from Dr. Richard W. Scott, a research scientist and expert in one of the Company's drugs. *See* Ex. 3. Dr. Scott states that he "was appalled at the vast number of factual errors and misleading statements presented in the article," and finds that "the reference to an 'unviable science' that appears in the article's title and throughout the text as patently untrue," and that arguments claimed to have been based on a "review by an 'independent scientist with Doctorate in Biochemistry' as specious and in certain instances laughable." *Id*. Far from being "very well researched," these independent sources show that a reasonable lawyer would or should have known it was a sham.

Had the Rosen Law Firm – or the unknown "industry expert" it claims to have consulted, 12/18/2015 Tr. 7:22-24 (PSLRA Hearing) – considered publicly available documents, or Defendants' Rule 11 Letter (Dkt. 61-2), it would have been readily apparent that the posting assertions were baseless, and that no amount of due diligence would result in any meritorious claims. Nonetheless, Plaintiff decided to continue to pursue the Company and its shareholders.[5]

### 4. Plaintiff mischaracterizes the three arguments in the initial complaints

To convince the Court his initial arguments were not frivolous, Plaintiff rewrites them, suggesting they involved some legal complexities. Opp. at 9. They did not. The contentions he sought to pursue in the initial complaints are found in paragraph 22, which provides:

> 22. … **Defendants made false and/or misleading statements and/or failed to disclose that: (1) Brilacidin is not effective; (2) Kevetrin does not activate the p-53 gene, which is a tumor suppressor; and (3) Defendant Menon did not earn his PhD in Pharmacology from Harvard University**. As a result of the

---

[4] That the posting says "empty office *building*" underscores the absurdity of its assertions because Cummings Center, where the Company is located, "is one of the largest conversions from factory to modern office and research space, anywhere," with "[m]ore than 2 million square feet of modern office and laboratory space." *See* Ex. 4.
[5] The SAC likewise contains numerous factual errors, as set forth in Defendants' Rule 11 chart. Dkt. 61 at 20-22.

>foregoing, the Company's public statements were materially false and misleading at all relevant times.

Dkts. 1 & 10 ¶22 (emphasis added); *see also* Dkt. 10 ¶25 ("In a phase 2 trial, Brilacidin did not work in 7/8 types of bacterial infection, including the most common types of infection. In the remaining 1/8, there is meaningful evidence that Brilacidin will fail. Brilacidin causes adverse side effects and will likely not be approved. **Brilacidin is simply not effective.**").

This Court must consider only the arguments actually made, and the only fair reading of the initial complaints is that, with respect to the first two claims, Plaintiff was simply copying the anonymous online posting's premise that the Company was a fraud with "*Unviable 'Science.'*" Dkt. 39-1. Any such claims regarding the efficacy or scientific operation of the drugs is unequivocally foreclosed by *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 154 (2d Cir. 2013), and/or the PSLRA's safe harbor for forward looking statements, *see* 15 U.S.C. § 78u-5, particularly given the drugs' status in clinical trials. *See also In re Keryx Biopharmaceuticals, Inc., Sec. Litig.*, No. 13 Civ. 1307 (KBF), 2014 WL 585658, at *1 (S.D.N.Y. Feb. 14, 2014) (securities law is not "a tool to second guess how clinical trials are designed and managed"). For this reason, his new characterizations here (and new claims in the SAC) are simply irrelevant.

Plaintiff's defense of his claim about Dr. Menon and his degree is equally unavailing. This claim objectively had *no* chance of success because even assuming the claim was not foreclosed by *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), the information *either* was not material to an investment decision as a matter of law, *see Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 661 (4th Cir. 2004) (CEO's educational misrepresentation immaterial because it did not alter the large body of information about company's financial data and the CEO's other qualifications), *or* if it were material, then rather than rely upon an obscure on-line Indian article in *Future Woman*, a reasonable investor would have had a duty – as this

Court held, *see* Op. at 19, n. 8 – to review the Forms 10-k during the class period, which **all** contained the correct information, *see Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337-38 (2d Cir. 2011) ("An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.") (quotation omitted). Again, the only reason this claim was made was because it was copied from the Mako Research posting.

In sum, no objectively reasonable lawyer would ever have filed a securities class action lawsuit based upon any of these claims in the first instance.

### 5. Plaintiff and the Rosen Law Firm ignore the PSLRA and the harm to the Defendants, its shareholders, and the public at large

To read Plaintiff's Opposition and reflect upon the Rosen Law Firm's conduct and decisions in this action, one would not know that the PSLRA even exists.

First, the Rosen Law Firm does not take the PSLRA's mandatory pre-filing certification requirement seriously, *see* 15 U.S.C. §78u-4(a)(2)(A)(i)-(vi), or, for that matter, its obligation to avoid making representations that might mislead this Court. There is strong evidence to suggest that the Rosen Law Firm has known from the beginning that when the plaintiffs made their certification under the pains of perjury that they had "reviewed the complaint and authorized its filing," *see* Dkts. 1-1, 10-1, it was false, specifically because the on-line system used by the Rosen Law Firm at the time (which now has been changed) to solicit securities plaintiffs did not provide that opportunity. Yet the Rosen Law Firm filed the certifications anyway, implying that there was a complaint, or at least taking no steps to be candid with the Court. *See, e.g.,* 12/18/2015 Tr. 7:16-17 ("we didn't file the complaint right away" and "wanted to check it out"); 7/15/2016 Tr. 7:17-18 (Sanctions Conference) ("I believe there was an initial draft. That is our usual practice …"); Dkt. 68, ¶3 (Declaration of Lawrence Rosen) ("My firm received PSLRA certifications from both Nicole O'Connell and Gary Zagami prior to the completion of final

drafts"). It is for this reason that the Rosen Law Firm likely takes such pains to argue against this Court's comparison of the complaint first certified by the plaintiffs and the one ultimately filed to help determine whether the inquiry was reasonable: there is nothing to compare.[6] Indeed, it is apparent that had any inquiry been conducted, the initial complaint never would have been filed, which is perhaps why the initial plaintiff apparently requested to be withdrawn. Opp. at 7.

Second, the PSLRA was intended to deter the abusive pattern and practice of filing securities lawsuits "whenever there is a significant change" in stock price, "with only faint hope" that a "plausible cause of action" exists. Dkt. 61-1 at 31. This is exactly what happened here, where a lawsuit was filed after the Rosen Law Firm read a story on the internet. And while the PSLRA adopted Rule 11's *standard*, it did not adopt Rule 11's *purpose*. Instead, Congress made clear that the PSLRA sanction provision was intended as a repudiation of many courts' leniency in the exercise of discretion in applying the rule, which only resulted in sanctions for the most egregious conduct. These considerations are highly relevant and must be a fundamental component in the exercise of discretion in a PSLRA case. *Gurary III*, 303 F.3d at 221 (awarding full sanctions and observing courts must be "bound by the mandates of the PSLRA, [otherwise] courts would be free to engage in the ordinary Rule 11 analysis, which Congress found too often resulted in the failure to compensate fully victims of abusive securities litigation").

Third, the Rosen Law Firm suggests that Defendants were in no way prejudiced by the initial and first amended complaints because they were not "required to draft a dispositive motion." Opp. at 3. This statement displays an astonishing degree of callousness, even arrogance. It wholly ignores: (1) the immediate and irreparable financial and reputational harm caused to the Company and its shareholders both by announcing an "Equity Alert" within two hours of the on-

---

[6] Defendants repeat their request for an *in camera* submission to compare the dates and content of the claimed draft complaint(s) that each plaintiff certified on August 6 & 7, to the complaint(s) actually filed on September 11 & 24.

line posting, and then issuing another press release contemporaneous with the filing of its threadbare complaint (Dkts. 39-18, 39-19); (2) the continuing harm to shareholders by refusing to withdraw the complaint at any time in this lawsuit (with only one former client joining the "class"); (3) the significant costs incurred by the Company to investigate and begin defending the complaint, particularly given that the Company has *no* revenue, SAC ¶62, and was required to give up potentially valuable patents to help fund operations and defense costs; and (4) the abusive conduct has jeopardized the development of promising new drugs by severely restricting the ability of the Company to use its equity line to continue late-stage development of desperately needed new antibiotics and advance novel ovarian cancer and psoriasis drugs, as well as impairing a pipeline of other clinical trials for other experimental drugs.

### *Conclusion*

The reasonable attorney's fees at issue here do not even begin to compensate the Defendants for the harm caused by the decision to file a class action lawsuit based purely on a story on the internet by an anonymous author who, in all likelihood, was involved in securities fraud. Because the PSLRA sanctions provision is only triggered upon "final adjudication," the Rosen Law Firm could have avoided this assessment altogether by seeking dismissal of their complaint at a time prior to "final adjudication." They chose not to, instead deciding to continue to pursue Defendants and harm its shareholders by filing a SAC. The Court agreed there was no merit to the lawsuit, readily dismissing all of the claims without oral argument. The record thus amply shows not only a failure to comply with Rule 11(b), but a substantial failure under the PSLRA because any nonfrivolous claims were not of sufficient quality to offset the weighty burden on Defendants of having to defend against a class action lawsuit that should never have been filed in the first place.

- 11 -

Dated:  October 7, 2016                                          Respectfully Submitted,

**ASHCROFT LAW FIRM, LLC**

/s/ Michael J. Sullivan
Michael J. Sullivan

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I, Michael J. Sullivan, hereby certify that on October 7, 2016, I electronically filed the foregoing document with the United States District Court for the Southern District of New York by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:


THE ROSEN LAW FIRM, P.A.
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Jonathan Stern, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jstern@rosenlegal.com

*Counsel for Plaintiffs*


/s/ Michael J. Sullivan
Michael J. Sullivan